VAIL ASSOCIATES, INC.,
Plaintiff–Appellant,

v.

The BOARD OF ASSESSMENT APPEALS OF the STATE OF COLORADO, Henry F. Shriver, and F. William Beier; the Board of County Commissioners of the County of Eagle; the Eagle County Board of Equalization, Dave Mott, Dan Williams and Keith Troxel; and Ella Bindley, County Assessor of the County of Eagle, Defendants–Appellees.

VAIL ASSOCIATES, INC.,
Plaintiff–Appellant,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF EAGLE; the Eagle County Board of Equalization; and Ella Bindley, County Assessor of the County of Eagle, Defendants–Appellees.

VAIL ASSOCIATES, INC.,
Plaintiff–Appellant,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF EAGLE; the Eagle County Board of Equalization; and G.J. "Jody" Caruthers, County Assessor of the County of Eagle, Defendants–Appellees.

Nos. 86CA0496, 86CA1598 and 87CA1760.

Colorado Court of Appeals,
Div. I.

June 2, 1988.

Rehearing Denied June 30, 1988.

Certiorari Denied Dec. 12, 1988.

Holme, Roberts & Owen, Lawrence L. Levin, J. Greg Whitehair, Englewood, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, Asst. Atty. Gen., Denver, for defendant-appellee The Bd. of Assessment Appeals of the State of Colo.

Eagle County Attorney's Office, James R. Fritze, Eagle Co. Atty., Eagle, for defendants-appellees The Bd. of County Com'rs of Eagle County, The Eagle County Bd. of Equalization, and the County Assessor of Eagle County.

TURSI, Judge.

Plaintiff, Vail Associates, Inc., appeals the decision of the district court affirming the actions of the State Board of Assessment Appeals and the Eagle County Board of Equalization holding that certain property owned by the plaintiff in Eagle County was not "residential real property" and, therefore, erred in upholding the rulings that the property was properly valued for assessment at a taxable rate of 29 percent of actual value rather than 21 percent. We affirm.

The sole issue presented for review is whether plaintiff's parcels of land qualify

as "residential real property" pursuant to Colo. Const. art. X, § 3(1)(b) and § 39–1–102, C.R.S. (1987 Cum.Supp.).

The dispositive facts are not in dispute and are stipulated to as follows: (1) Each of the subject parcels of land are included and platted residential subdivisions approved by Eagle County, and is characterized by tract, block, and lot number. (2) The zoning underlying each subject parcel of land is that of residential use only and no change from that residential use is permitted under the Beaver Creek Planned Unit Development. (3) Each of the subject parcels of residential land has the following improvement and amenities either on or adjacent thereto: completed roads, natural gas lines, electricity lines, sanitary sewer lines, storm sewer lines, cable TV lines, telephone lines, water lines, and ski ways. (4) On the applicable assessment date none of the subject parcels had a residential dwelling unit located on the property.

Colo. Const. art. X, § 3(1)(b) reads:

"Residential real property, *which shall include all residential dwelling units and the land, as defined by law*, on which such units are located, and mobile home parks, but shall not include hotels and motels, shall be valued for assessment at [twenty-one percent or, in years after 1985, a modified percent of its actual value].... All other taxable property shall be valued for assessment at twenty-nine percent of its actual value." (emphasis supplied)

Section 39–1–102, C.R.S. (1987 Cum.Supp.) reads:

"(14.3) 'Residential improvements' *means a building designed for use predominantly as a place of residency* by a person, a family, or families. The term includes buildings, structures, fixtures, fences, amenities, and water rights *which are an integral part of the residential use*. The term also includes mobile homes as defined in section 38–29–102(8) or 42–1–102(82)(b), C.R.S.

"(14.4) 'Residential land' means a parcel or contiguous parcels of land under common ownership upon which residential improvements are located and *which is

used as a unit in conjunction with the residential improvements located thereon*. The term includes parcels of land in a residential subdivision, the exclusive use of which land is established by the ownership of such residential improvements....

"(14.5) 'Residential real property' means residential land and residential improvements but does not include hotels and motels as defined in subsection (5.5) of this section." (emphasis supplied)

The plaintiff contends that pursuant to the relevant constitutional and statutory provisions "residential real property" need not have a residential dwelling located upon it to qualify for the percentage ratio of valuation for assessment of residential real property as determined in accordance with Colo. Const. art. X, § 3(1)(b) and §§ 39–1–102(14.3), (14.4), and (14.5). It argues that definitional ambiguities make an analysis of the legislative history essential, and it asserts that the pertinent legislative history supports the conclusion that the legislation enacted pursuant to the constitutional amendment creates a broad definition of residential real property which requires vacant lots with amenities to be assessed at the ratio of actual cash value provided for residential real property.

Defendants contend that the language of the constitution is clear and that one need not resort to the legislative history. Further, they contend that if resort is made to the legislative history, that history fails to support plaintiff's position. We agree with the defendants.

We conclude that a common sense interpretation of the constitutional provision in question is completely consistent with the trial court's finding that the clause "as defined by law" granted the General Assembly the authority to define the types of dwellings which are residential dwelling units and which include the underlying land, insofar as those units are, in fact, suitable for residential dwelling and are not hotels or motels. To do otherwise, would be inconsistent with the language in the constitutional amendment as approved by the People. Legislative hearings and par-

ticularly the final conference committee report demonstrates that the legislative intent was to grant homeowners a modicum of tax relief.

Further, we conclude that the provision in the constitution "as defined by law" authorized the General Assembly in its definition of residential improvements to broaden the definition of residential real properties to include fences, cable TV lines, ski lines, etc., as long as these amenities are appurtenant to a residential dwelling. A statute being construed must be read and considered as a whole in order to ascertain the legislative intent and to give consistent, harmonious, and sensible effect to all its parts. *Dodge v. Department of Social Services,* 657 P.2d 969 (Colo.App.1982).

Thus, we conclude that the general assembly, intending compliance with Colo. Const. art. X, § 3(1)(b), *see* § 2–4–201(1)(a), C.R.S. (1980 Repl.Vol. 1B), did achieve the legislative purpose of granting relief to homeowners. *See* § 2–4–203(1)(g), C.R.S. (1980 Repl.Vol. 1B).

Judgment affirmed.

PIERCE and PLANK, JJ., concur.