**MISSION VIEJO COMPANY, a California Corporation, Petitioner–Appellant,**

v.

**DOUGLAS COUNTY BOARD OF EQUALIZATION, Respondent–Appellee,**

and

**Board of Assessment Appeals of the State of Colorado, Appellee.**

**No. 93CA0743.**

Colorado Court of Appeals, Div. V.

Aug. 11, 1994.

Downey & Knickrehm, P.C., Thomas E. Downey, Jr., Kate E. Knickrehm, Henry J. Rickelman, Denver, for petitioner-appellant.

J. Mark Hannen, County Atty., Thomas W. McNish, Asst. County Atty., Castle Rock, for respondent-appellee.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Mark W. Gerganoff, Asst. Atty. Gen., Denver, for appellee.

Opinion by Judge CASEBOLT.

In this property tax case, petitioner, Mission Viejo Company appeals an order of the Board of Assessment Appeals (BAA) which upheld a change of classification for Mission Viejo's property, known as the Highlands Ranch Mansion (the Mansion), from residential to commercial for the 1992 property tax year. We affirm.

The relevant facts are not in dispute. The Mansion was originally constructed in 1891 for use as a residence and was used as such until the mid–1970's. In 1978, it was acquired by Mission Viejo as part of a larger parcel.

In 1979, Mission Viejo applied to Douglas County for a New Communities Permit and zoning for a Planned Community Development which included the subject property. Under the terms of the permit, Mission Viejo is required to maintain the Mansion for public use. The permit, as well as the commercial zoning for the area, prohibits use of the Mansion as a residence.

The property is currently being used as a community center. No fee is charged for use of the Mansion, although a refundable deposit is required. The property is not a money-making project for Mission Viejo.

The Douglas County Assessor reclassified the property in 1992 from residential to commercial. This classification was upheld by the Douglas County Board of Equalization (BOE) and the BAA.

I.

Mission Viejo argues that the BAA erred in approving the change of classification and asserts that the Mansion continues to qualify as "residential real property" pursuant to Colo. Const. art. X, § 3(1)(b) and § 39–1–102, C.R.S. (1993 Cum.Supp.). We disagree.

Colo. Const. art. X, § 3(1)(b) provides that:

Residential real property, which shall include all residential dwelling units and the land, as defined by law. . . . shall be valued for assessment at [twenty-one percent or, in years after 1985, a modified percent of its actual value]. . . . All other taxable property shall be valued for assessment at twenty-nine percent of its actual value.

The General Assembly has defined "residential real property" as residential land and residential improvements. Section 39–1–102(14.5), C.R.S. (1993 Cum.Supp.). "Residential land" is defined as a parcel "upon which residential improvements are located and which is used as a unit in conjunction with the residential improvements located thereon." Section 39–1–102(14.4), C.R.S. (1993 Cum.Supp.). The statute defines "residential improvements" as "a building, or that portion of a building, *designed for use* predominantly as a place of residence by a person, a family, or families." Section 39–1–102(14.3), C.R.S. (1993 Cum.Supp.) (emphasis added).

### A.

■ Mission Viejo first contends that the actual use of a property is not relevant under the statutory definition of "residential improvements." It argues, in essence, that because the Mansion was originally and architecturally "designed for use" as a residence, this conclusively requires its classification as a "residential improvement" and hence "residential property" under the tax statutes.

We agree that a structure must be "designed for use predominantly as a . . . residence," rather than simply "actually used" as a residence, in order to meet the statutory definition of a "residential improvement." However, we do not agree that the word "designed" refers only to the original, architectural design of the building, or that actual use is an irrelevant consideration.

First, there is nothing in the statute to indicate that only the original design of a structure is relevant. Under Mission Viejo's construction, once a property is classified as a residential property, it could never be re-classified, regardless of the later use of the

buildings. However, Mission Viejo concedes that reclassification can and does occur under certain circumstances, as for example when residential homes are converted to offices. Indeed, the statutory scheme as a whole reflects a legislative intent to allow reclassification upon a change of actual use, *see* § 39–1–103(5)(c), C.R.S. (1993 Cum.Supp.), and there is no language to indicate that the reclassification statute does not apply to residential real property.

Second, we do not accept Mission Viejo's implied assertion that only the architectural design of a structure is relevant.

■ In construing a statute, we must give effect to the plain meaning of the words contained therein. *Engelbrecht v. Hartford Accident & Indemnity Co.,* 680 P.2d 231 (Colo.1984). According to *Webster's Third New International Dictionary* 611 (1986), "design" means, *inter alia,* "to conceive, to plan out in the mind"; "to devise for a particular purpose"; and also to "devote" or "intend." Hence, "designed for use" in this context contemplates that a structure is "devoted" to or "intended" for a particular use at the time its status is under review.

■ Statutes are to be construed as a whole, giving effect to every word. *In re Estate of Hill,* 713 P.2d 928 (Colo.App.1985). "Use" contemplates that an item is employed in accomplishing an end; thus, "actual use" is relevant in determining "design" in this context.

Moreover, "use" in the statute refers to "place of residence," *i.e.,* a place where people live, thus contemplating actual use. And, the term "predominantly," meaning "mostly," likewise refers to "use." Under this analysis, current use of the property is undoubtedly a factor to utilize in determining whether a building is "designed for use predominantly as a place of residence." There is nothing in the plain meaning of these words which indicates that only architectural design is to be considered.

■ This analysis comports with administrative interpretations of the property tax statutes, which must be given significant deference by the courts. *Urbish v. Lamm,* 761 P.2d 756 (Colo.1988).

■ The relevant factors established by the property tax administrator for classifying property are: 1) the actual use of a structure; 2) the zoning and any other applicable use restrictions; and 3) the probable use. *See* 2 *The Assessors Reference Library* § IV at 7.4 (revised 1/92) (mandating three factors which must be considered when classifying property). *See generally* § 39-1-104(11)(a)(I), C.R.S. (1993 Cum.Supp.) (requiring assessors to follow the guidelines established in *The Assessors Reference Library* when valuing and assessing taxable property).

Additionally, 2 *The Assessors Reference Library* § IV at 4.7 notes that: "[I]f a residential dwelling exists, the land is to be classified as residential." The term "dwelling" in this context means "a building or construction used for a residence." *Websters Third New International Dictionary* 706 (1986). Again then, current, actual use is inherent in this definition.

Other divisions of this court have also recognized that such factors as actual use and zoning are relevant considerations in determining the proper classification of a property for tax purposes. *See Gyurman v. Weld County Board of Equalization,* 851 P.2d 307 (Colo.App.1993) (actual use); *Vail Associates v. Board of Assessment Appeals,* 765 P.2d 593 (Colo.App.1988) (zoning).

■ Applying these principles to the case at issue, we conclude that the BAA did not err in finding that the Mansion is no longer residential real property. The Mansion is no longer used as a residence, and indeed, residential use is prohibited by the applicable zoning and use agreements with Douglas County. Therefore, it was not intended, devoted, or "designed" for use predominantly as a residence, and a change in classification was warranted. *See* § 39-1-103(5)(c), C.R.S. (1993 Cum.Supp.) (reclassification required upon change of actual use or discovery of erroneous classification).

### B.

■ Mission Viejo argues that a denial of residential classification would result in a violation of the principle that valuations for assessments must be just and equalized under Colo. Const. art. X, § 3 and § 39-1-101, C.R.S. (1993 Cum.Supp.) It asserts that model homes in Douglas County are classified as residential, even though they are actually used for the commercial purpose of selling other homes and that therefore it would be inconsistent not to classify the Mansion as residential. We do not agree.

In making this argument, Mission Viejo overlooks the fact that actual use is only one relevant factor under the "designed for use" standard. Model homes are located in areas which are zoned for residential use, and they are generally intended for use as residences after the other homes in the subdivision are sold. Because of this, they are "designed" predominantly for residential use. Therefore, absent circumstances not present here, model homes would be properly classified as "residential real property" under this analysis.

Likewise, homes which stand empty for a period of time would not lose their residential classification simply because they were not "actually" being used as a residence. Again, actual use is only one of the relevant considerations in determining whether the home remains "designed for use" predominantly as a residence.

In contrast, the Mansion is not zoned for, intended for, or devoted to residential use, nor can it be under the permits and agreements. Therefore, its classification as commercial is just and equal.

### II.

■ Finally, Mission Viejo argues that the Mansion should not be classified as commercial because it is devoted to public use and is not a money-making project. We disagree.

There are only three classifications of property in the tax statutes: agricultural, residential, and commercial. There is no definition of "commercial property" in the property tax statutes. However, the assessor's manual defines "commercial property" as "all lands, improvements, and personal property used primarily as a commercial enterprise." 2 *The Assessors Reference Library,* § VII at 7.14 (revised 1/92).

There is nothing in the manual to indicate that a "commercial enterprise" must be for profit. The ordinary meaning of "commerce" includes both activities "having profit as a primary aim" and other "dealings between individuals or groups in society." *Webster's Third New International Dictionary* 456 (1986). Further, Mission Viejo has presented no evidence that the tax statutes exclude not-for-profit use from the definition of "commercial." *See State v. Clark General Store, Inc.,* 658 P.2d 1385 (Colo.App.1983) (holding that a commercial activity can occur even when no charge is made for the service rendered).

Here, the Mansion is used as a community center, and the zoning is exclusively commercial. Therefore, the BAA did not err in upholding the commercial classification.

The order is affirmed.

NEY and ROTHENBERG, JJ., concur.