COLORADO COURT OF APPEALS                                        **2017COA30**

Court of Appeals No. 16CA0066
Colorado State Board of Assessment Appeals Nos. 65665 & 65666

James E. O'Neil, Mary Ellen O'Neil, Shay Patrick O'Neil, and Shaun Michael
O'Neil,

Petitioners-Appellees,

v.

Conejos County Board of Commissioners,

Respondent-Appellant,

and

Board of Assessment Appeals,

Appellee.

ORDER AFFIRMED

Division II
Opinion by JUDGE DAILEY
J. Jones and Berger, JJ., concur

Announced March 9, 2017

Benjamin F. Gibbons, P.C., Benjamin F. Gibbons, Monte Vista, Colorado, for
Petitioners-Appellees

Nicolas Sarmiento, County Attorney, Conejos, Colorado; Stephane Walter
Atencio (on the briefs), Alamosa, Colorado, for Respondent-Appellant

Cynthia H. Coffman, Attorney General, Emmy A. Langley, Assistant Attorney
General, Denver, Colorado, for Appellee

¶ 1 In this property tax case, respondent, the Conejos County Board of County Commissioners (the County), appeals an order of the Board of Assessment Appeals (the Board) classifying property owned by the petitioners, the O'Neil family, as residential for tax purposes. We affirm.

## I. Background

¶ 2 In 2010, James E. and Mary Ellen O'Neil purchased the subject property and built a log house on it, to be used as a vacation home and an inheritance for their two sons, Shay and Shaun.[1] The house was initially classified for tax purposes as residential.

¶ 3 The O'Neils, who primarily live in New Mexico, periodically visited the home, but it remained unoccupied much of the time. Starting in August 2011, the O'Neils listed the property as available for short-term, overnight rental on the website Vacation Rentals By Owner (VRBO). In order to rent the property, they obtained from

---

[1] After purchasing the property, James and Mary Ellen purportedly quitclaimed it to Shay and Shaun. In the quitclaim deed, James and Mary Ellen (1) reserved the right to the use, occupation, and benefit of the property for the duration of their lives; (2) retained full financial responsibility for debts associated with the property; and (3) reserved the right to, at their option, render the deed null and void.

the County a special use permit, which required payment of sales and lodging tax; the permit did not reclassify the property or change the zoning from residential.

¶ 4    In 2012, the Conejos County Assessor (the Assessor) re-classified the property, for ad valorem tax purposes, from residential to commercial.  Because the reclassification worked to the O'Neils' detriment,[2] James O'Neil filed a petition for abatement with the County regarding the 2012 and 2013 tax years.  After the County denied the petition, the O'Neils filed an appeal with the Board, which, after conducting an evidentiary hearing, overturned the Assessor's action and returned the property's classification to residential for those years.

¶ 5    The County appeals the Board's decision to this court, pursuant to sections 13-4-102(2)(x) and 39-8-108(2), C.R.S. 2016.

---

[2] In Colorado, tax rates apply to the "assessed value" of the property, meaning they are applied to a fraction of the value that is determined by the assessment rate.  "Residential" property is assessed at 7.96% of its actual value, adjusted biennially; whereas "commercial" property is assessed at a rate of 29% of the actual value.  §§ 39-1-104(1),-104.2(3), C.R.S. 2016; 2 Div. of Prop. Taxation, Dep't of Local Affairs, *Assessors' Reference Library* § 6, at 6.1 (rev. Jan. 2017).

## II. The Property's Classification

¶ 6      The County contends that the Board improperly classified the O'Neils' property as residential. We are not persuaded.

### A. A Procedural Issue: Addressing the Presumption Afforded the Assessor's Classification

¶ 7      The County contends that the Board failed to apply the presumption in favor of the Assessor's classification of the property. We disagree.

¶ 8      In the Board proceedings, the O'Neils, as the taxpayers, bore the burden of rebutting the presumption that the Assessor's classification was correct. *Gyurman v. Weld Cty. Bd. of Equalization*, 851 P.2d 307, 310 (Colo. App. 1993). While the Board did not specifically cite this presumption, it began its analysis by thoroughly addressing the County's position. It analyzed the commercial classification statutes, as well as the definitions of "commercial property" and "mixed use property" in related materials. It considered the Assessor's testimony, and the meaning of "overnight lodging" offered to the public.

¶ 9      Only after analyzing the County's position did the Board consider whether the O'Neils had presented sufficient evidence to

prove that the Assessor's classification of the property as "commercial" was incorrect. The Board found that, although the Assessor had classified the property as commercial "[b]ased on her research and conviction that the subject's primary use was "lodging," the O'Neils nevertheless presented sufficient evidence to prove that the primary use of the house was residential. In our view, the Board's order demonstrates that it implicitly applied the presumption in favor of the County, and then found that the O'Neils had met their burden of proof. *See id.* ("[T]he determination whether that burden of proof has been met by competent evidence by the taxpayer is a question of fact for the [Board] to decide."); *see also Bd. of Assessment Appeals v. Sampson,* 105 P.3d 198, 205, 207 (Colo. 2005) ("A taxpayer who met [its] burden of proof also successfully rebutted the presumption of correctness. . . . [A] taxpayer is entitled to relief by demonstrating that the classification is incorrect.").

### B. The Merits of the Board's Decision

¶ 10    The Board has authority to review county tax assessments and decisions of boards of county commissioners. *Gilpin Cty. Bd. of Equalization v. Russell,* 941 P.2d 257, 261 (Colo. 1997); *see* §§ 39-2-

4

125(1), 39-8-108(1), C.R.S. 2016.  Because the Board acts de novo in these proceedings, we review the propriety of the Board's classification determination, and not that of the Assessor or the County.  *Johnston v. Park Cty. Bd. of Equalization*, 979 P.2d 578, 581 (Colo. App. 1999).

¶ 11    Because the Board's property classification involves mixed questions of law and fact, it will be upheld on appeal if it (1) has a reasonable basis in law and (2) is supported by substantial evidence in the record.  *Home Depot USA, Inc. v. Pueblo Cty. Bd. of Comm'rs*, 50 P.3d 916, 920 (Colo. App. 2002).

¶ 12    At issue here is whether the O'Neils' property should be classified as "residential" or "commercial."[3]

---

[3] Although the County, in its brief, refers to several cases involving a third type (i.e., "mixed use") of classification, it does not argue that the O'Neils' property should be so classified.  Such a classification appears to have been reserved for properties that, unlike the O'Neils', have discrete or separate areas that can be simultaneously occupied or used for both commercial and residential purposes.  *See, e.g.*, 2 *Assessors' Reference Library* § 6, at 6.27 ("Hotels and motels are classified, valued, and assessed as commercial property unless documentation exists to support a classification as mixed-use property.  To be classified as a mixed-use property, the hotel or motel property owner and/or operator must be able to document the use of any portion of the property as residential property.  Specifically, evidence of overnight accommodation that is leased or rented for thirty consecutive days

*1.    Reasonable Basis in Law*

¶ 13    Section 39-1-102(14.5), C.R.S. 2016, defines "[r]esidential real property" as meaning "residential land and residential improvements."  Sections 39-1-102(14.4)(a) and 39-1-102(14.3), in turn, define "[r]esidential land" and "[r]esidential improvement," respectively,  as "a parcel or contiguous parcels of land under common ownership upon which residential improvements are located," and "a building, or that portion of a building, designed for use predominantly as a place of residency by a person, a family, or families."

¶ 14    The applicable statute does not define "commercial property." The State Property Tax Administrator's *Assessors' Reference Library* (ARL) manuals — which are binding on all county assessors[4] — define "[c]ommercial property" as "includ[ing] all lands, improvements, and personal property used as a commercial

_____

or longer by the same person or business entity must be provided."); *see also E.R. Southtech, Ltd. v. Arapahoe Cty. Bd. of Equalization*, 972 P.2d 1057, 1058 (Colo. App. 1998) (classifying as mixed-use a rental complex "consisting of 10 separate buildings, each containing 12 housing units," and taxing half used as a hotel as commercial, and half rented as apartments as residential).

[4] *See Huddleston v. Grand Cty. Bd. of Equalization*, 913 P.2d 15, 17 (Colo. 1996).

6

enterprise." 2 Div. of Prop. Taxation, Dep't of Local Affairs, *Assessors' Reference Library* § 6, at 6.27 (rev. Jan. 2017). Although the manuals do not define the term "commercial," a division of this court has recognized that "[t]he ordinary meaning of 'commerce' includes both activities 'having profit as a primary aim' and other 'dealings between individuals or groups in society.'" *Mission Viejo Co. v. Douglas Cty. Bd. of Equalization*, 881 P.2d 462, 466 (Colo. App. 1994) (quoting *Webster's Third New International Dictionary* 456 (1986)). The "commercial" nature of property does not depend on its profitability. *Id.*; *see also Manor Vail Condo. Ass'n v. Bd. of Equalization*, 956 P.2d 654, 657 (Colo. App. 1998) (in determining whether property should be classified as "commercial," "the profitability of the property is not controlling").

¶ 15 Whether property is classified "residential" or "commercial," then, depends, respectively, on whether it was "designed for use predominantly as a place of residency" or whether it was used for activities "having profit as a primary aim" or "other dealings between individuals or groups in society."

¶ 16 In making this determination, we consider several factors — to wit, the use for which the property was originally designed; the

7

current, actual use of the property; zoning and any other applicable use restrictions; and the reasonable future use of the property. *See Mission Viejo,* 881 P.2d at 465 (listing the last three factors); *see also* 3 Div. of Prop. Taxation, Dep't of Local Affairs, *Assessors' Reference Library* § 2, at 2.3 (rev. Jan. 2017) (listing the "primary criteria for classification" including current use, zoning and use restrictions, probable use, and future use); 2 *Assessors' Reference Library* § 6, at 6.1 (stating that "the use for which improvements were constructed" can also be considered in classifying property).

¶ 17     In this case, the Board determined that the proper classification of the property was "residential" because its "predominant and actual use was as a second home." The Board based this conclusion on the following circumstances:

- The property was designed for use predominantly as a residence.

- The site was purchased and the home was built for personal use.

- The O'Neils' intent was to use the property as a second home and as an inheritance for their sons.

- The decision to allow short-term rentals was made to offset expenses and to share the outdoor experience with visitors.

- Even though the property was made available much of the year, most of the rental activity occurred in the summer months.

- The O'Neil family itself used the property when possible.

¶ 18     In our view, the Board's determination has a "reasonable basis in law," inasmuch as it is based on the relevant factors of original intended use of the property, its actual current use, and its reasonable future use.

### 2.    *Substantial Evidence in the Record*

¶ 19     The Board's decision is also supported by substantial evidence — the testimony of James E. O'Neil. "Substantial evidence is that which is probative, credible, and competent, such that it warrants a reasonable belief in the existence of a particular fact without regard to contradictory testimony or inference." *City of Loveland Police Dep't v. Indus. Claim Appeals Office,* 141 P.3d 943, 950 (Colo. App. 2006).[5]

---

[5] We evaluate the "substantial evidence" issue in this manner largely because the evaluation of the credibility of the witnesses and

9

¶ 20     In the Board hearing, O'Neil testified that the property was built as a vacation home for the family and to pass on to its sons. The O'Neil family went there "as much as possible," which included "two or three dozen times . . . for a long weekend, or a week" in 2012, and two weeks in 2013. O'Neil testified that "we would go up there with our family, our dogs, whatever, and just enjoy it, even during the winter months." Even though the property was advertised most of the year as *available* for rent on VRBO, O'Neil described the property as "rented only during the summer months" and vacant most of the time.

¶ 21     O'Neil further testified that when the house was listed for rent on VRBO, the primary intended use of the property did not change to generating income. He explained that the money earned from renting was "to provide upkeep to the house . . . while we shared it with other people" and that "it might help supplement some of the things, such as upkeep and maintenance." He stated that "it was nice that people would pay to use, so that we could provide cleaning

_____

the weight, probative value, and sufficiency of all the evidence are matters solely within the factfinding province of the Board. *Gyurman v. Weld Cty. Bd. of Equalization*, 851 P.2d 307, 310 (Colo. App. 1993).

services, and upkeep on the home, and all the necessary things. But, as you can easily see, we showed quite a loss on every year that we rented."

¶ 22    Finally, O'Neil related that the property is located in a "Residential Zone District" and subject to a restrictive covenant prohibiting it from being used for "commercial" purposes.

¶ 23    Based on this evidence, the Board in our view reasonably determined that the intended and actual use of the property was predominantly residential rather than commercial in nature. *See Houston v. Wilson Mesa Ranch Homeowners Ass'n*, 2015 COA 113, ¶¶ 19, 24 (finding that, for purposes of a restrictive covenant on a home listed on VRBO, "mere temporary or short-term use of a residence [by vacation renters] does not preclude that use from being 'residential' . . . [and] that receipt of income does not transform residential use of property into commercial use").[6]

---

[6] The County's reliance on *Farny v. Board of Equalization*, 985 P.2d 106 (Colo. App. 1999), and *E.R. Southtech*, 972 P.2d 1057, for a different conclusion, is misplaced.

In *Farny*, a division of this court upheld a Board ruling that a mountain cabin qualified for residential classification when the owners actually used it as a place of residence approximately twenty-five days every year and it was at least "minimally suitable"

### 3. *The County's Contrary Assertions*

¶ 24      We reject the County's assertion that the Board misapplied the law in determining the current, actual use of the property. In its view, this factor must be determined by comparing the number of days the property was actually rented out (or available for rental) to the number of days it was actually occupied by the O'Neils as a second or vacation home. The O'Neils, the County points out, rented out the home more than they occupied it themselves,[7] and they made the house available for rent for most of the year.

---

for such residential purposes, despite lacking electricity and plumbing. 985 P.2d at 108, 110. The cabin in *Farny*, like the O'Neils' home, was designed and intended for residential use.

In *Southtech*, the tax classification related to a rental complex "consisting of 10 separate buildings, each containing 12 housing units" that were rented for both short-term and long-term accommodations. 972 P.2d at 1058. Over the Board of Equalization's objection, the Board of Assessment Appeals ordered the mixed-use property to be classified as 50% residential and 50% commercial. *Id.* Unlike the O'Neils' property, however, the property in *Southtech* was a large complex operating partially as a hotel and partially as apartment rentals, not a single-family residence used by its owners for vacations and rented occasionally.

[7] James O'Neil estimated that the home was rented to others for 70 to 75 days in 2012 and for "most of the summer" in 2013. He estimated that his family used the home "approximately 30 to 40 days" in 2012 and 14 days in 2013. Although the County asserts that evidence of "estimated approximate use" cannot be considered

12

¶ 25    The County cites us to no authority, nor have we found any, equating "actual use" simply to the number of days "actually" occupied for one purpose or another.  Indeed, the law would appear to be otherwise.  *See Farny v. Bd. of Equalization*, 985 P.2d 106, 108, 110 (Colo. App. 1999) (classifying cabin as "residential" when only used by the owners twenty-five days of the year because it was "devoted to or intended for" use as a residence).  As to the "availability" of the property, when the property is not actually occupied, it is essentially available for either rental or residential purposes.  The Board recognized this when it found, for example, that, although the property was made available for rental most of the time, it was only actually rented for 70 to 75 days in 2012, which "means that the property was a residence for approximately 290-295 days whether or not it was occupied during this time."

¶ 26    We perceive no unreasonable application of the law in the Board's refusal to characterize the property's use as "commercial" instead of "residential" during the time the property was unoccupied.  In the first instance, "homes which stand empty for a

competent evidence of "actual use," it cites no authority in support of that proposition.

period of time would not lose their residential classification simply because they were not 'actually' being used as a residence." *Mission Viejo*, 881 P.2d at 465. In the second instance, to classify a vacation home as commercial for days it was empty, but listed as available for rent on the Internet, would undermine the purpose of the "residential" tax classification — which is to "grant homeowners a modicum of tax relief." *Vail Assocs., Inc. v. Bd. of Assessment Appeals*, 765 P.2d 593, 594-95 (Colo. App. 1988).

¶ 27 Thus, we conclude that it was reasonable for the Board to count the days the property was empty as "residential" use, regardless of its availability as a rental.

¶ 28 Nor was the Board's determination fatally undermined by two other, uncontested, circumstances in the record — to wit, (1) the O'Neils' primary residence was in New Mexico and (2) the O'Neils paid sales and lodging taxes and obtained a special use permit for the VRBO rental.

¶ 29 The criteria for classifying property for tax purposes concern the characteristics and use of the property, not where the owner lives or works. *See* 3 *Assessors' Reference Library* § 2, at 2.3. A

second home does not cease to be residential for property tax purposes because it is unoccupied more than it is used.

¶ 30    Further, the O'Neils' payment of sales and lodging taxes, and acquisition of a special permit allowing short-term rentals, did not dictate that the property be classified "commercial" because those payments, in and of themselves, say nothing about the predominant intent or usage of property.[8]

¶ 31    Finally, we reject, as unpersuasive, the County's attempt to analogize the O'Neils' use of their property to that of owners of hotels, motels, and bed and breakfasts (B&Bs), all of which have been classified in the ARL or county ordinance as "commercial" properties.[9]  The O'Neils' offering of their house for occasional rent,

---

[8] We disagree with the County's assertion that the Board dismissed these matters as irrelevant to its decision.  Although the Board said they did not "affect the classification" of the property, we read this remark as intimating only that they did not undermine the Board's conclusion that the O'Neils predominantly used the property for residential, not commercial, purposes.

[9] See 2 *Assessors' Reference Library* § 6, at 6.27-6.28 ("Hotels and motels are classified, valued, and assessed as commercial property . . . .  Bed and breakfast properties are unique mixed-use properties . . .[with] [c]ommercial lodging area[s] . . . defined as . . . guest room[s] . . . offered for the exclusive use of paying guests on a nightly or weekly basis."); *see also* Conejos County Land Use Code § 2.100 (defining "overnight lodging" as "[a] facility or structure

15

while retaining the right to use it as a second home themselves, is distinctly different than running a hotel, motel, or B&B.

¶ 32    "Hotels and motels" are defined in the statute as "improvements . . . that are used by a business establishment primarily to provide lodging, camping, or personal care or health facilities to the general public and that are predominantly used on an overnight or weekly basis." § 39-1-102(5.5)(a).  Unlike hotels and motels, the O'Neils' intent was not profit, but to cover the costs of maintaining the property.  And, unlike hotels or motels, the O'Neils did not make their home available to the "general public": they would not simply rent to someone who was willing to pay the fee; instead, they "screen[ed]" potential renters to make sure they were the type to be trusted with the house.  Additionally, the O'Neils visited the property for their own vacations when they wished, and they could at any time decline to rent, which is more consistent with sharing their home as opposed to transforming it into a hotel.

---

offering lodging accommodations on a daily basis to the general public . . . includ[ing] such uses as hotel or motel, resort lodge, conference center, guest ranch, bed and breakfast or a commercial boarding house").

16

¶ 33    Finally, the O'Neils' property is not like a B&B, which, according to the ARL, has "unique mixed-use properties" and must meet the following criteria: (1) the innkeeper must reside in the establishment or directly next to it; (2) at least one meal must be provided at no additional charge; and (3) the establishment has no more than thirteen sleeping rooms available for guests.  *See* 2 *Assessors' Reference Library* § 6, at 6.27-6.28.  The O'Neils did not use their property in this fashion.

### III.    Conclusion

¶ 34    In sum, we perceive no legal error on the part of the Board in classifying the O'Neils' property as residential for the 2012 and 2013 tax years.  *Cf. Slaby v. Mountain River Estates Residential Ass'n,* 100 So. 3d 569, 579-80 (Ala. Civ. App. 2012) (restrictive covenant case) ("[N]either [the] financial benefit nor the advertisement of the property or the remittance of a lodging tax transforms the nature of the use of the property from residential to commercial . . . ."); *Russell v. Donaldson,* 731 S.E.2d 535, 538 (N.C. Ct. App. 2012) (holding that restrictive covenants for residential development stating "[n]o lots shall be used for business or commercial purposes" did not prohibit short-term vacation rentals).

¶ 35     The order is affirmed.

JUDGE J. JONES and JUDGE BERGER concur.