23CA1249 CT Partners v Eagle 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1249 Board of Assessment Appeals No. 22BAA458 CT Partners, LLC, Petitioner-Appellee, v. Eagle County Board of Equalization, Respondent-Appellant, and Board of Assessment Appeals, Appellee. ORDER AFFIRMED Division VI Opinion by JUDGE SCHUTZ Lipinsky and Martinez*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Montgomery Little & Soran, Michael R. McCormick, Greenwood Village, Colorado, for Petitioner-Appellee Bryan Treu, County Attorney, Christina Hooper, Deputy County Attorney, Eagle, Colorado, for Respondent-Appellant 
 Phillip J. Weiser, Attorney General, John August Lizza, First Assistant Attorney General, Tanya M. Santillan, Assistant Attorney General, Denver, Colorado, for Appellee *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023.
 1 ¶ 1 The Eagle County Board of Equalization (Eagle County) appeals the order of the Board of Assessment Appeals (BAA) classifying a lot in Vail owned by CT Partners, LLC (Subject Lot) as residential land for property tax purposes. More specifically, Eagle County alleges that the BAA relied on legally insufficient evidence and erred as a matter of law when it ruled that the use of unpaved parking spaces on the Subject Lot satisfied the “related improvement” and “essential” requirements of section 39-1-102(14.4)(a)(I)(C), C.R.S. 2023. We affirm the BAA’s decision. I. Background ¶ 2 Land classified as residential property is taxed at a lower rate than land classified as vacant property. § 39-1-104(1)(a), C.R.S. 2023 (setting the tax rate for nonresidential property at 29%); § 39-
1-104.2(3)(r)(I), C.R.S. 2023 (setting the 2022 tax rate for residential property other than multi-family property at 6.95%). Thus, the BAA’s classification of the Subject Lot as residential property resulted in less property tax revenue for the county than if the Subject Lot had been reclassified as vacant land. ¶ 3 CT Partners is a limited liability company managed by Thomas Gargan. In 2020, CT Partners bought the Subject Lot and a 
 2 contiguous lot (Residential Lot) located on a cul-de-sac in Vail. The Residential Lot was improved with a single-family home, which Gargan and his wife made their residence. The Subject Lot was unimproved when CT Partners purchased it. But before the purchase, commercial vehicles used the Subject Lot during the construction of surrounding properties, resulting in significant rutting and erosion. ¶ 4 To improve its appearance and make it viable as an area to park vehicles, CT Partners began improving the Subject Lot in 2020 by adding rock, dirt, and topsoil; installing an irrigation system; constructing a stone path between the residence and the Subject Lot; and sowing wildflower seed. Gargan testified that these improvements were completed by the summer of 2022. ¶ 5 Until 2022, the Subject Lot was classified as residential. That year, the legislature amended the requirements for classifying property as residential. Based on those new standards, an appraiser for Eagle County classified the Subject Lot as vacant for tax year 2022. CT Partners appealed to the BAA, which ruled in CT Partners’ favor and ordered the property reclassified as residential 
 3 property. Eagle County appeals the decision of the BAA, alleging the BAA’s reclassification was erroneous. II. Standard of Review and Relevant Law ¶ 6 A classification by a county assessor is presumed to be correct, but that presumption is rebuttable if the taxpayer shows it is incorrect by a preponderance of the evidence. Gyurman v. Weld Cnty. Bd. of Equalization, 851 P.2d 307, 310 (Colo. App. 1993); Thibodeau v. Denver Cnty. Bd. of Comm’rs, 2018 COA 124, ¶ 7. ¶ 7 The supreme court recently addressed the standards we apply when reviewing a BAA decision: It is the BAA’s function, and not that of a reviewing court, to weigh the evidence and to resolve conflicts therein. Jefferson Cnty. Bd. of Cnty. Comm’rs v. S.T. Spano Greenhouses, Inc., 155 P.3d 422, 424 (Colo. App. 2006). Thus, an appellate court may overturn an order of the BAA “only if it finds an abuse of discretion, or that the order was arbitrary and capricious, based upon clearly erroneous factual findings, unsupported by substantial evidence in the record, or otherwise contrary to law.” Hinsdale Cnty. Bd. of Equalization v. HDH P’ship, 2019 CO 22, ¶ 19, 438 P.3d 742, 747. Lodge Props., Inc. v. Eagle Cnty. Bd. of Equalization, 2022 CO 9, ¶ 26. 
 4 ¶ 8 We review the BAA’s decision as a mixed question of law and fact. Aberdeen Invs., Inc. v. Adams Cnty. Bd. of Cnty. Comm’rs, 240 P.3d 398, 400 (Colo. App. 2009). Whether the evidence before the BAA was legally sufficient to support the BAA’s decision presents an issue of law. Farny v. Bd. of Equalization, 985 P.2d 106, 109 (Colo. App. 1999). We review the BAA’s interpretation of a statute de novo. Sandra K. Morrison Tr. v. Bd. of Cnty. Comm’rs, 2020 COA 74, ¶ 8. We will apply an agency’s interpretation of a statute if “the interpretation has a reasonable basis in the law and is supported by the record.” Id. (quoting Marshall v. Civ. Serv. Comm’n, 2016 COA 156, ¶ 9). ¶ 9 When construing a statute, we endeavor to effectuate the intent of the General Assembly by looking to the plain meaning of the language it used. Mook v. Bd. of Cnty. Comm’rs, 2020 CO 12, ¶ 24. In the absence of a statutory definition, we construe a statutory term according to its “ordinary or natural meaning.” Id. (citation omitted). “In applying the plain meaning of statutory language, we must ‘give consistent effect to all parts of [the] statute, and construe each provision in harmony with the overall statutory design.’” Id. (citation omitted). 
 5 ¶ 10 For purposes of the property tax statute, “Residential land” means a parcel of land upon which residential improvements are located. The term also includes: . . . . (C) A parcel of land without a residential improvement located thereon, if the parcel is contiguous to a parcel of residential land that has identical ownership based on the record title and contains a related improvement that is essential to the use of the residential improvement located on the identically owned contiguous residential land. § 39-1-102(14.4)(a)(I)(C). ¶ 11 The parties agree that the Subject Lot is contiguous to the Residential Lot and that the same entity owns both lots. Thus, the only issue before us is whether the Subject Lot contains an essential related improvement. As relevant here, the statute defines a “related improvement” as “a driveway, parking space, or improvement other than a building.” § 39-1-102(14.4)(a)(III)(B). III. Analysis ¶ 12 Eagle County argues that the BAA erred by concluding that CT Partners presented sufficient evidence to establish that the modifications made to the Subject Lot were sufficient to qualify as a related improvement. It also argues that the BAA erred by 
 6 concluding that CT Partners established that use of the Subject Lot was essential. We address these contentions in turn. A. Related Improvement 1. Purpose and Date of the Improvements ¶ 13 First, Eagle County argues that the Subject Lot cannot qualify as a related improvement because CT Partners failed to provide evidence by which the BAA could conclude that the addition of rocks, dirt, and topsoil to, and the leveling and seeding of, the Subject Lot was for the purpose of creating parking spaces. We do not agree. ¶ 14 At the BAA hearing, Gargan testified about the improvements made to the Subject Lot: The nearest parking from our house is Big Horn Park, which is almost a mile away. There is insufficient parking in the area. . . . . I had called the Officer in charge of Code Enforcement, Officer Castillo, who assured me that what I was doing was fine. That, moreover, other people in East Vail had used snowblowers to blow . . . the snow off their grass and use those as parking. So, I was under the impression that it was legal. 
 7 I would not have bought this house if I couldn’t have purchased the [Subject Lot]. I made that clear . . . to the Realtor. But because of all this construction . . . they were using [the Subject Lot] to turn around. And so, they damaged the [Subject Lot] where I, I had to improve it . . . . ¶ 15 According to Gargan, CT Partners engaged a contractor to bring in “six or seven bucket[s full] of rock and dirt to fill in the depressions from [the] heavy trucks” and “three or four yards of topsoil” to level the parking area. Gargan also testified that CT Partners created a stone pathway to connect the parking area on the Subject Lot to the entryway of the residence. In total, CT Partners spent approximately $30,000 to complete the additions to the Subject Lot. Gargan’s testimony supports the BAA’s conclusion that the improvements made to the Subject Lot adjacent to the cul-
de-sac were for the purpose of creating parking spaces. ¶ 16 The motivation for these improvements was the Gargans’ conclusion that the existing parking associated with the residence was not sufficient to meet their needs. The improvements of the Subject Lot were thus necessary to permit additional parking on the Subject Lot for the benefit of the Gargans’ use of the Residential 
 8 Lot. Thus, we reject Eagle County’s argument that the BAA lacked sufficient evidence to conclude that CT Partners made the improvements to the Subject Lot for the purpose of creating parking spaces. ¶ 17 Relatedly, Eagle County argues that CT Partners failed to prove that the improvements on the Subject Lot were completed by the assessment date — January 1, 2022 — because Gargan testified that he wasn’t sure if the improvements were completed in the summer of 2022 or 2021. But Gargan also testified concerning photographs taken in October and November of 2021, which were admitted into evidence and showed that the Subject Lot was filled, leveled, seeded, and used for parking at that time. ¶ 18 Eagle County relies on Farny in support of its contention that CT Partners failed to prove that the improvements were completed by January 1, 2022. But the language it quotes from Farny does not support its argument — “[T]he primary factor to be considered in determining the proper classification for property tax purposes is the actual use of the property on the relevant assessment date.” 985 P.2d at 109 (emphasis added). The relevant assessment date for 2022 taxes is January 1, 2022, § 39-1-105, C.R.S. 2023, and the 
 9 BAA had evidence before it that the rocks, dirt, and leveling improvements that were required to allow parking on the Subject Lot existed by the fall of 2021. ¶ 19 Additionally, Farny was not concerned with questions of partially completed improvements. There, the county assessor classified the taxpayers’ land as vacant after reclassifying a small rustic cabin on the property as a shed. Farny, 985 P.2d at 107. The BAA rejected that determination, concluding that the structure was more suitably defined as a cabin because the taxpayers resided in the cabin for approximately twenty-five days a year. Id. at 108. Recognizing that there was conflicting evidence on the issue at the BAA hearing, the division deferred to the findings made by the BAA and affirmed the residential classification. Id. at 110. 2. Unpaved Parking Spaces ¶ 20 Eagle County argues that the BAA erred by concluding that the Subject Lot was a related improvement because Vail Code of Ordinances section 14-3-2 requires that parking spaces be paved. We reject this argument for multiple reasons. First, the determination of whether improvements on the Subject Lot qualify as a related improvement is governed by section 39-1-102(14.4) of 
 10 the Colorado Revised Statutes, not Vail’s ordinances. And the statute expressly includes a “parking space” within its definition. Contrary to Eagle County’s position, the word “paved” does not appear in the statute, and we cannot insert it. See Mook, ¶ 52. 3. “Use” Versus “Contain” ¶ 21 Lastly, Eagle County argues that the BAA misinterpreted section 39-1-102(14.4) by relying on evidence that the parking spaces were “used,” instead of determining whether the Subject Lot “contains” a statutory related improvement. It asserts that the BAA ignored the language of section 39-1-102(14.4)(a)(I)(C) that allows for a parcel of land to be classified as residential “if the parcel . . . contains a related improvement.” (Emphasis added.) It argues that the Subject Lot did not contain a parking space simply because it was used for parking. ¶ 22 CT Partners and the BAA counter that the hearing included testimony and evidence showing that the Gargans made significant improvements to the Subject Lot, and that they and their guests used the improved area for parking. This, they contend, establishes the existence of parking spaces on the Subject Lot. We agree. 
 11 ¶ 23 The definition of a “related improvement” expressly includes “parking space.” There is no requirement that the parking space be paved to establish that it is “contained” on the parcel, as that term is used in section 39-1-102(14.4)(a)(I)(C). While the statute does not provide a specific definition of the word “contains,” the Merriam-
Webster Dictionary, https://perma.cc/L93K-N329, includes the following definitions of the word: “to have within” or “hold” or “include.” The unpaved parking spaces are within the Subject Lot. Similarly, the Subject Lot includes and holds the unpaved parking spaces. ¶ 24 Moreover, we fail to see how the addition of pavement on top of the rocks, dirt, and topsoil would render the parking spaces more “within” or “included” on the Subject Lot than they already are. In short, we reject Eagle County’s argument that the parking spaces are not contained within the Subject Lot simply because they are not paved. Because the improvements were contained on the Subject Lot and met the statutorily defined and intended use — as parking spaces — we conclude that the BAA did not err by finding that the Subject Lot contained a related improvement. 
 12 B. Essential ¶ 25 Eagle County argues that, even if the evidence was sufficient to show that the parking spaces were a related improvement, the BAA nonetheless erred by concluding that the parking spaces were essential to the use of the Residential Lot. ¶ 26 First, Eagle County alleges that the BAA erroneously relied on Mission Viejo Co. v. Douglas County Board of Equalization, 881 P.2d 462, 465 (Colo. App. 1994), because it only applied the first factor — actual use of a structure — that the division identified in that case. As Eagle County notes, Mission Viejo also referred to two other factors: the zoning and any other applicable use restrictions on the property and the probable use thereof. Id. ¶ 27 Eagle County points to the use of the word “structure” in support of its argument that an unpaved parking space is insufficient to qualify as a related improvement. But Mission Viejo used this term in the context of reviewing a zoning reclassification of a mansion, after its conversion from a historical residence to a community center. Id. at 463. Thus, Eagle County’s argument about the word “structure” is unavailing because this case involves parking spaces, and the definition of a related improvement 
 13 includes a parking space without any use of the word “structure.” § 39-1-102(14.4)(a)(III)(B). ¶ 28 Eagle County makes no argument based on the third Mission Viejo factor — probable use. And with respect to the second factor — zoning and land use restrictions — Eagle County largely rehashes the arguments about zoning requirements that we reject above. Moreover, the BAA heard and considered testimony that a Vail ordinance prohibits parking on unpaved property, but it also received testimony that such ordinance is not enforced. Thus, the BAA considered the applicable restrictions on use of the Subject Lot. Therefore, we discern no error in the BAA’s reference to the first Mission Viejo factor. ¶ 29 Next, Eagle County argues that the use of the Subject Lot for parking was not essential because the residence contained ample parking. The evidence introduced at the hearing demonstrated that the residence has two garages and as many as eleven parking spaces along the driveway. Gargan testified that he has undergone multiple spinal fusions, that one of his legs is partially paralyzed, and that he sometimes needs a wheelchair. He also testified that his wife had a brain tumor and has limited mobility. 
 14 ¶ 30 To accommodate these needs, Gargan stated that the residence is Americans with Disabilities Act certified and includes an elevator. He also testified that he and his wife park in front of the house and that they need to keep the driveway clear so they can readily access their front door. Given these considerations, Gargan testified that the additional parking spaces on the Subject Lot are “absolutely essential” and that he “would not have bought the house if [he] couldn’t have secured the [Subject Lot].” ¶ 31 Eagle County asserts that the unpaved spaces are not essential because the Gargans park on the Residential Lot, and not on the Subject Lot. It also argues that any lack of parking on the Residential Lot is due to the Gargans’ use of the garages for purposes other than parking. Lastly, it cites the supreme court’s definition of “essential” in a similar context as “of the utmost importance.” Mook, ¶ 52 (quoting Merriam-Webster Dictionary, https://perma.cc/5LKP-CD7A). Applying this definition, Eagle County argues that parking for nonresidents is not of the utmost importance. ¶ 32 Eagle County’s arguments are belied by the testimony of its own expert, Mark Chapin, the Eagle County Assessor. Chapin 
 15 testified that he authored the original language of H.B. 21-1061, which added the definition of “related improvement” to the statutory subsection defining “residential land.” Ch. 63, sec. 1, § 39-1-
102(14.4)(a)(III)(B), 2021 Colo. Sess. Laws 252-53. ¶ 33 After his initial examination, a member of the BAA asked Chapin if the term “essential” is viewed from the subjective perspective of the property owner or from a more objective market-
based perspective. The inquiry led to the following exchange: [BAA Member] So, when you’re defining essential, what is the barometer for what essential is? Is it essential to the, to the normal buyer, to the existing owner? I mean . . . everyone has their own definition of what they need to function in their own property. So, Mr. Garg[a]n has a different set of rules for his — what creates an essential living environment for himself than maybe I do, or you do. What, what do [you] use as a barometer? What do you consider essential in just what the normal market would be, or what? [Chapin] I, I mean, it’s, it’s buyer’s discretion, really, as, as to what they want, or owner’s discretion. If, you know, I as a, a property owner want to buy the adjoining lot and want to use it in conjunction with my residence, then, pursuant to the [s]tatute, I believe that 
 16 there has to be a — an improvement made to the second lot. And it has to be essential to the residential use, that that’s maintained on the primarily — primary residential site. Does, does that help? [BAA Member] Essential to anybody using it? . . . [Chapin] Well, it — I — maybe. You know, you stated, yourself, sir, that, you know, it’s, it’s sort of up to the buyer, you know, or the owner, what they want and what they determine . . . is the use. ¶ 34 Thus, Chapin’s testimony about what type of improvement can qualify as a related improvement depends on the use made of the improvement and its subjective importance to the owner of the contiguous residential lot. The BAA received testimony that the Subject Lot was used for parking and the additional parking was “absolutely necessary” given the physical needs of the Gargans, and the Gargans described the uses that they and their guests made of the Subject Lot in connection with the Residential Lot. Accordingly, the record supports the BAA’s finding that the use of the Subject Lot was essential to the Gargans’ use of the Residential Lot, and we may not disturb that finding on appeal. 
 17 IV. Disposition ¶ 35 The order is affirmed. JUDGE LIPINSKY and JUSTICE MARTINEZ concur.