The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 7, 2019

## 2019COA18

## No. 17CA0938, *Martin Trust v. Bd. of Cty Comm'rs* — Taxation — Property Tax — Residential Land

A division of the court of appeals considers whether the Board of Assessment Appeals (BAA) erred when it concluded that a vacant parcel of land under the same ownership as a contiguous parcel containing a residence was vacant land.

In separate opinions by Judges Carparelli and Vogt, the division concludes that the BAA did not err.  It adopts that analysis in *Twilight Ridge, LLC v. Board of County Commissioners*, 2018 COA 108, holding that the requirement in section 39-1-102(14.4)(a), C.R.S. 2018, that contiguous parcels must be "used as a unit in conjunction with the residential improvements located thereon" does not include the "use" of vacant land by looking across it at objects beyond the land.

Judge Carparelli also concludes that section 39-1-102(14.4)(a) must be applied in a manner that is consistent and harmonious with section 39-1-102(14.3) and does not render any portion of it meaningless. Doing so, Judge Carparelli concludes that these provisions require that a parcel of land under the same ownership as a contiguous parcel that has a residence cannot be classified as "residential land" unless there is located upon it a building, structure, fixture, fence, amenity, or water right that is an integral part of the residential use of the neighboring parcel.

Judge Hawthorne dissents and concludes that the requirement that the parcels be "used as a unit" requires only that the owner use a parcel to accomplish something — including protecting the view from the residence. Thus, he concludes that "use" does not require "active use" and "used as a unit in conjunction with the residential improvements" does not require a contiguous parcel to be essential to the residential use of the neighboring parcel. Disagreeing with Judge Carparelli, Judge Hawthorne also concludes that the statutes do not require that all contiguous parcels have "residential improvements" on them.

COLORADO COURT OF APPEALS                                    **2019COA18**

Court of Appeals No. 17CA0938
Board of Assessment Appeals Case Nos. 69059 & 69724

Martin Trust,

Petitioner-Appellant and Cross-Appellee,

v.

Board of County Commissioners of La Plata County, Colorado; and Board of
Equalization of La Plata County, Colorado,

Respondents-Appellees and Cross-Appellants,

and

Board of Assessment Appeals,

Appellee.

ORDERS AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE CARPARELLI*
Vogt*, J., specially concurs
Hawthorne, J., dissents

Announced February 7, 2019

Ryley Carlock & Applewhite, F. Brittin Clayton III, Denver, Colorado, for
Petitioner-Appellant and Cross-Appellee

Sheryl Rogers, County Attorney, Kathleen L. Moore, Assistant County Attorney,
Durango, Colorado, for Respondents-Appellees and Cross-Appellants

Philip J. Weiser, Attorney General, Krista Maher, Assistant Attorney General,
Denver, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Petitioner, the Martin Trust, appeals the orders of the Board of Assessment Appeals (BAA) partly denying its request to reclassify a parcel of its land as residential for property tax purposes. The Board of County Commissioners of La Plata County and the Board of Equalization of La Plata County (the County) cross-appeal the order. In separate opinions, the majority affirms the BAA's classification of the Trust's west parcel as vacant land, reverses the remaining BAA orders, and remands with directions.

## I.    Factual Background and Procedural History

¶ 2    Mr. James Martin and Ms. Virginia Martin bought two adjacent parcels of land in La Plata County, Colorado, in 2000. The following graphic showing the relationship between the parcels was admitted at the BAA hearing. It is oriented with north at the top.



The east parcel, labeled "Residential," contains the Martins' home on a 0.62-acre lot, and the parcel labeled "Adjacent Land Lot" (the west parcel) is an unimproved 0.72-acre lot that adjoins the residential parcel's western boundary. Colorado Division of Wildlife (DOW) open land borders the parcels' north and west sides. For tax year 2014, the Martin Family Partnership, LLLP (the partnership) held the title to the west parcel and the Martins held the title to the residential parcel as joint tenants. The Partnership and the Martins

thereafter transferred title to both parcels to the Trust, which held the titles for tax years 2015-2016.

¶ 3    The County Assessor classified the west parcel as vacant land for tax years 2014-2016, and the Trust sought to have it reclassified as residential.  It appealed the Assessor's decision to the Board of Equalization and Board of County Commissioners.  The Boards denied both appeals.  The Trust appealed those decisions to the BAA.

¶ 4    At a consolidated de novo hearing, the BAA upheld the County's 2014 classification of the west parcel as vacant land, finding that the parcels were not under common ownership because they were separately titled and the owners were "separate and distinct legal entities."  For the 2015-2016 classifications, the BAA partially granted the Trust's appeal, stating it was "persuaded by [the Trust's] claim there would be a loss of west views if a residence [was] constructed on the [west parcel]."[1]  But it determined that

---

[1] The BAA issued two orders, one for 2014-2015 and another for 2016.  Because the relevant sections of the 2016 order are virtually identical to the 2014-2015 order, we treat them as a single order in this opinion.

only two-thirds of the west parcel was used as a unit in conjunction with the residential parcel for maintaining views from that parcel. On that basis, it ordered that only the two-thirds portion of the west parcel be reclassified as residential.

¶ 5 The Trust contends that the BAA erred when it concluded that the west parcel was vacant land for the tax year 2014 and partly vacant land for tax years 2015-2016. Conversely, the County contends that the BAA erred when it reclassified the west parcel as residential land for tax years 2015-2016. The BAA argues the evidence supports its determinations.

II. Standard of Review

¶ 6 A land classification determination for property tax purposes is a mixed question of law and fact. *Kelly v. Bd. of Cty. Comm'rs*, 2018 COA 81M, ¶ 10 (citing *Home Depot USA, Inc. v. Pueblo Cty. Bd. of Comm'rs*, 50 P.3d 916, 920 (Colo. App. 2002)). We defer to "the BAA's classification . . . if it has a reasonable basis in law and is supported by substantial evidence in the record considered as a whole." *Farny v. Bd. of Equalization*, 985 P.2d 106, 109 (Colo. App. 1999). We may affirm an agency's legal conclusion on any grounds

4

supported by the record. *See Joseph v. Mieka Corp.*, 2012 COA 84, ¶ 24; *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004).

¶ 7     When construing and applying statutes, "[o]ur primary task is to ascertain and effectuate the intent of the General Assembly." *Moffett v. Life Care Ctrs. of Am.*, 219 P.3d 1068, 1072 (Colo. 2009). When construing a statute, we look to its plain and ordinary language to give effect to the legislature's intent. *Young v. Brighton Sch. Dist. 27J*, 2014 CO 32, ¶ 11. We consider the statute as a whole, construing it in a manner that gives consistent, harmonious, and sensible effect to all its parts. *Oakwood Holdings, LLC v. Mortg. Invs. Enters. LLC*, 2018 CO 12, ¶ 12. We must also "give meaning to all portions of the statute, and avoid a construction rendering any language meaningless." *Well Augmentation Subdistrict v. City of Aurora*, 221 P.3d 399, 420 (Colo. 2009) (citing *Fabec v. Beck*, 922 P.2d 330, 337 (Colo. 1996)). In addition, we must not adopt an interpretation that leads to an illogical or absurd result. *Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004). Last, "[w]e do not add words

5

to a statute." *Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011).

### III.   Constitution and Statutes

### A.   Colorado Constitution

¶ 8      "The Colorado Constitution states that all taxes upon real property shall be uniform and distinguishes agricultural and residential property from other types of real property for assessment purposes." *Boulder Cty. Bd. of Equalization v. M.D.C. Constr. Co.*, 830 P.2d 975, 978 (Colo. 1992) (citing Colo. Const. art. X, § 3(1)(a)).

¶ 9      Article X, section 3 of the Colorado Constitution establishes guidelines for determining the *actual value of property* and the *valuation for assessment* of such property.  Colo. Const. art. X, § 3(1)(a).  It describes "[r]esidential real property" to include "all residential dwelling units and the land, as defined by law, on which such units are located," and states that for tax assessment purposes, real property is valued based on a percentage of its *actual value.*  Colo. Const. art. X, § 3(1)(b).  Thus, under the constitution, "residential real property" refers to residences and to the land on which they are located.  However, the provision states that the meaning of "land" is as defined by law.  As will be discussed later,

6

section 39-1-102(14.4)(a), C.R.S. 2018, defines the meaning of "land" in terms of parcels of land. What constitutes a "parcel of land" is determined by the legal description in the parcel's deed.

## B.    Vacant Land

¶ 10    Section 39-1-103, C.R.S. 2018, addresses the valuation of land for property tax purposes. As pertinent here, subsection 103(14)(c)(I) states:

> For purposes of [section 39-1-103(14)], "vacant land" means any lot, parcel, site, or tract of land upon which no buildings or fixtures, other than minor structures, are located. "Vacant land" may include land with site improvements.[2] "Vacant land" includes land that is part of a development tract or subdivision when using present worth discounting in the market approach to appraisal; however, "vacant land" shall not include any lots within such subdivision or any portion of such development tract that improvements, other than site improvements or minor structures, have been erected upon or affixed thereto.

¶ 11    In plain and unequivocal words, section 39-1-103(14)(c)(I) states that for purposes of property tax valuation assessment,

---

[2] "'Site improvements' means streets with curbs and gutters, culverts and other sewage and drainage facilities, and utility easements and hookups for individual lots or parcels." § 39-1-103(14)(c)(II)(B), C.R.S. 2018.

7

"vacant land" is any parcel or tract of land "upon which no buildings or fixtures, other than minor structures, are located."[3] This language is unambiguous and must be applied in accordance with its plain and ordinary meaning. The County Assessor did so when it classified the west parcel as "vacant land."

## C. Residential Land

¶ 12    Section 39-1-102(14.4)(a) in pertinent part states that "'[r]esidential land' means a parcel or contiguous parcels of land under common ownership upon which residential improvements are located and that is used as a unit in conjunction with the residential improvements located thereon."[4]

---

[3] Subsection 103(14)(c)(II)(A) defines "minor structures" to mean "improvements that do not add value to the land on which they are located and that are not suitable to be used for and are not actually used for any commercial, residential, or agricultural purpose."

[4] However, "'[residential land]' does not include any portion of the land that is used for any purpose that would cause the land to be otherwise classified." § 39-1-102(14.4)(a), C.R.S. 2018. For example, a residential improvement can also be integral to an agricultural operation. Under subsections 102(1.6)(a)(I)(A) and (B), a residential improvement must be "deemed to be 'integral to an agricultural operation' for [classification of 'agricultural land' under subsection 102(1.6)(a)(I)(A)] if an individual occupying the residential improvement either regularly conducts, supervises, or

8

¶ 13    Thus, "residential land" is land, including single parcels of land and contiguous parcels of land under common ownership,

  1. "upon which residential improvements are located"; and

  2. "that is used as a unit in conjunction with the residential improvements located thereon."

Thus, to ascertain and effectuate the General Assembly's intent regarding the meaning of "residential land," it is essential that we also do so with regard to the meaning of the term "residential improvements."

### D.    Residential Improvements

¶ 14    The plural term "residential improvements" is defined in section 39-1-102(14.3).  The first sentence of subsection 102(14.3) defines "[r]esidential improvements" as "a building, or that portion of a building, designed for use predominantly as a place of residency by a person, a family, or families."  The second sentence states that "residential improvements" also includes "buildings,

---

administers material aspects of the agricultural operation or is the spouse or a parent, grandparent, sibling, or child of the individual."

structures, fixtures, fences, amenities, and water rights that are an integral part of the residential use."

¶ 15    Thus, land "upon which residential improvements are located" may be land upon which there is "a building, or that portion of a building, designed for use predominantly as a place of residency by a person, a family or families" (a residence).  It may also be land upon which there is a "building[], structure[], fixture[], fence[], amenit[y], [or] water right[] that [is] an integral part of the residential use" (man-made structures or water rights).

## IV.    Issues Presented

### A.    Residential Improvements

¶ 16    The County contends that while the BAA's factual findings are supported by the record, it erred as a matter of law by reclassifying two-thirds of the west parcel as residential land for tax years 2015 and 2016 because the "used as a unit" element requires that each parcel of land must contain its own residential improvement.  It relies on dicta in *Sullivan v. Board of Equalization*, 971 P.2d 675 (Colo. App. 1998).

## B.    Used as a Unit

¶ 17    The Trust contends that the BAA misconstrued the meaning of "used as a unit in conjunction with the residential improvements" in subsection 102(14.4)(a) and, as a result, erred when it decided that for tax years 2015 and 2016 one-third of the west parcel was vacant land.  The Trust argues that case law regarding "used as a unit" involving single parcels "appl[ies] equally" to contiguous parcels, and that those cases establish that undeveloped land adjacent to a residence is "used as a unit" with the residence if the land is used "in any manner to enhance the use or enjoyment of the residence — including merely keeping other people off of the land," so long as the land is not used for non-residential purposes such as commerce or agriculture.  So, according to the Trust, because the west parcel was purchased to protect the view from the Martins' residence, and a house located on the west parcel would change the views, the undisputed facts standing alone are more than sufficient to require residential classification of both parcels.

## C.    Passive Use

¶ 18    The BAA now asserts that "passive uses," such as view preservation, do not "satisfy the statutory requirement that an

11

adjacent parcel be used as a unit in conjunction with a residence."

In the alternative, the BAA argues, if view preservation satisfies the "used as a unit" requirement, then the BAA's fact determinations were correct and we should uphold the partial classifications.

### D. Resolution of These Issues

¶ 19    In separate opinions, the majority concludes that, as applied to contiguous parcels of land, subsection 102(14.4)(a) requires that

- the parcels must be used as a unit in conjunction with the residential improvements on them; and

- using the land as a unit in conjunction with the residential improvements on it requires active use of residential improvements that are an integral part of the use of the residence, and does not include merely looking at or beyond vacant parcels.

In addition, I conclude that as applied to contiguous parcels of land, subsection 102(14.4)(a) requires that

- at least one of the contiguous parcels must have a residence on it;

- there must be residential improvements on contiguous parcels on which there are no residences;

- residential improvements on contiguous parcels must be an integral part of the use of the residence on the neighboring parcel; and

- the parcels must be used as a unit in conjunction with the residential improvements on them.

## V.    Analysis

¶ 20    In the following paragraphs, I ascertain and effectuate the intent of the General Assembly by considering article 1 of title 39 as a whole and giving consistent, harmonious, and sensible effect to the definitions of "residential improvements," "residential land," and "vacant land."  The analysis demonstrates that the second sentence of subsection 102(14.3), which requires the presence of man-made structures or water rights, has no meaning or effect when applied to a parcel on which there is a residence and has meaning and effect only when it is applied to a parcel that is contiguous to such a parcel.  Based on the analysis, I conclude that, in accordance with the second sentence of subsection 102(14.3), a parcel that is

contiguous to one on which there is a residence can be classified as residential land only when it has a "building[], structure[], fixture[], fence[], amenit[y], [or] water right[]" that is "an integral part of the residential use" of the parcel containing the residence.

## A. "Residential Land" and "Residential Improvements"

¶ 21    Plainly stated, the Trust contends that the General Assembly's intention in subsection 102(14.4) was to define "residential land" to mean a parcel of land on which there is a residence and each contiguous parcel that is under the same ownership and is used in conjunction with the residence. If this had been the General Assembly's intent, it could have and most likely would have written subsection 102(14.4) using this plain and ordinary language. However, this is not the language of the statute. The General Assembly did not include the word "residence" anywhere in subsection 102(14.4) or subsection 102(14.3). Instead, it used the term "residential improvements" and provided a lengthy definition of that term. To effectuate the General Assembly's intention, we must give consistent and harmonious effect to subsections 102(14.4) and 102(14.3), and apply subsection 102(14.4) in a

manner that does not render any portion of subsection 102(14.3) meaningless.

B.    Applying Subsection 103(14)(c)(I)

¶ 22    Subsection 103(14)(c)(I) states that a parcel "upon which no buildings or fixtures, other than minor structures, are located" is "vacant land."  It does not say that such a parcel is "vacant land" unless it is contiguous to a parcel on which there is a residence. Nor does it say that such a parcel is "vacant land" unless it is used in conjunction with a residence located on an adjacent parcel that is under common ownership.  Applying subsection 103(14)(c)(I) in accordance with the plain and ordinary meaning of the language used and without inserting any words not present, the Trust's west parcel is "vacant land."

C.    Applying Subsection 102(14.3)

1.    The Residential Parcel

¶ 23    When the first sentence of subsection 102(14.3) is included in subsection 102(14.4)(a), it provides that "residential land" means a parcel "upon which [a building, or that portion of a building, designed for use predominantly as a place of residency by a person, a family, or families is] located and that is used as a unit in

15

conjunction with the [building designed for use predominantly as a place of residency by a person, a family, or families]."

¶ 24    Figure 1 depicts two parcels of land that are under common ownership.



Figure 1.

As explained above, for either of the parcels to be classified as "residential land," at least one of them must have upon it "a building, or [a] portion of a building, designed for use predominantly as a place of residency by a person, a family, or families," § 39-1-102(14.3), and the land must be "used as a unit in conjunction with [that building]," § 39-1-102(14.4)(a).

¶ 25    In Figure 2, the left parcel has a swimming pool on it and the right parcel is vacant.

16



Figure 2.

Despite the presence of an amenity, the left parcel cannot properly be classified as "residential land" based on the portion of subsection 102(14.3) that states that "residential improvements" includes man-made structures and water rights because the amenity is not "an integral part of [a] residential use [of the parcel]."

¶ 26    In Figure 3, the left parcel has a residence on it.



Figure 3.

Here, the left parcel can properly be classified as "residential land" in accordance with the first sentence of subsection 102(14.3), because there is located upon it "a building, or that portion of a building, designed for use predominantly as a place of residency by a person, a family, or families."

17

¶ 27    The addition of another building, structure, fixture, fence, or amenity, such as the amenity depicted in Figure 2, would not change the classification.  Thus, application of the second sentence of subsection 102(14.3) would have no meaning or effect with regard to this parcel or any other parcel upon which there is a residence.  *Cf. Twilight Ridge, LLC v. Bd. of Cty. Comm'rs*, 2018 COA 108, ¶ 24 ("used as a unit" language in subsection 102(14.4)(a) may not be read out of the statute).

### 2.    The Contiguous Parcel

¶ 28    When the second sentence of subsection 102(14.3) is included in subsection 102(14.4)(a), "residential land" means "a parcel or contiguous parcels of land under common ownership upon which [buildings, structures, fixtures, fences, amenities,[5] and water

---

[5] Section 39-1-102 does not define "amenities."  However, under the principle of *ejusdem generis*, the term "amenities" must be construed to be of the same general nature as these man-made structures.  See *Davidson v. Sandstrom*, 83 P.3d 648, 656 (Colo. 2004).  Hence, "amenities" must be construed to refer to man-made structures.

rights[6] that are an integral part of the residential use] are located and that is used as a unit in conjunction with the residential improvements located thereon."

¶ 29    In Figure 4, the parcel on the left has a residence and the one on the right only has electrical fixtures and a public coffee kiosk in the southeast corner.



Figure 4.

Because the parcel on the right does not contain a residence, it does not qualify as residential land under the first sentence of subsection 102(14.3).  And because the electrical fixtures and kiosk are not "an integral part of the residential use" of the parcel on the left, they do not qualify as "residential improvements" under the second sentence of subsection 102(14.3).  And, further, because the parcel does not have any "residential improvements" located upon

---

[6] The term "water right" means the "right to use in accordance with its priority a certain portion of the waters of the state."  § 37-92-103(12).

it, it cannot be said that the parcel is being "used as a unit in conjunction with the residential improvements located thereon." Still further, because the electrical fixtures and kiosk are being used for purposes unrelated to use of the residence, it cannot be said that the land is being used in conjunction with the residence on the parcel on the left.

¶ 30    To the extent that the owner looks across the parcel on the right at tall buildings and city lights in the distance, she is not using the parcel "in conjunction with the residential improvements located thereon" because there are no such improvements on the parcel.

¶ 31    In Figure 5, the parcel on the left has a residence and the parcel on the right has a garage and a swimming pool that are used by a person, a family, or families who live in the residence.



Figure 5.

The parcel on the left qualifies as "residential land" because there is a residence located upon it and the land is used as a unit in conjunction with the residence. The parcel on the right also qualifies for classification as "residential land" because it is under common ownership with the parcel on the left, a building and an amenity are located upon it that are "an integral part of the residential use" of the land, and the two parcels are "used as a unit in conjunction with the residential improvements [on them]."

### D.    Consistency

¶ 32    When construing subsection 102(14.4), we must consider the statute as a whole and give consistent, harmonious, and sensible effect to all its parts. We neither add words to a statute nor render meaningless any words that are present.

21

1.     Consistency With Subsection 103(14)(c)(I)

¶ 33     Subsection 103(14)(c)(I) states plainly and without exception that a parcel upon which there is no building and no structure is "vacant land." We cannot add the phrase "unless the parcel is contiguous to a commonly owned parcel on which a residence is located." In addition, construing this provision and subsection 102(14.4)(a) consistently and in accordance with the language in them, it would be erroneous to conclude that a parcel on which there is no building and no structure is residential land.

¶ 34     The presence of man-made structures or water rights that are an integral part of the use of a residence provides an objective basis to distinguish between residential land and vacant land. It also enables a rational determination of whether the parcel is used as a unit in conjunction with a residence. If, as the Trust asserts, there were no requirement for man-made structures or water rights on a contiguous parcel, the determination that a vacant parcel is being used in conjunction with a neighboring residence would be entirely subjective. Construing subsection 102(14.4) in this manner would be unworkable. Under a subjective standard, one landowner could

22

assert that she passively benefits from vacant land by looking at a beautiful vista. Another landowner could assert that she benefits by looking at people and cars as they pass by. Still another owner might not assert that she looks at anything in particular. The assessor would be required to determine whether to believe the owner. Moreover, landowners with similarly vacant parcels would be susceptible to disparate application of the statute based on near or distant objects on the far side of their vacant parcels. If the General Assembly intended that subsection 102(14.4) be applied as in *Fifield v. Pitkin County Board of Commissioners*, 2012 COA 197, and *Hogan v. Board of County Commissioners*, 2018 COA 86, and as asserted by the Trust and the dissent, it could easily and plainly have drafted the statute to grant residential land classification to all vacant parcels contiguous to a parcel that has a residence and is under the same ownership.

2.     Consistency With Subsection 102(14.3)

¶ 35    As explained above, subsection 102(14.4)'s definition of "residential land" requires (1) the presence of "residential improvements," which subsection 102(14.3) says must be "an

23

integral part of the residential use," and (2) that the land be "used as a unit in conjunction with the residential improvements." These subsections  must be construed in a manner that is consistent and does not render any portion meaningless.[7]  In this regard, the second sentence of subsection 102(14.3), which defines "residential improvements" to include "buildings, structures, fixtures, fences, amenities, and water rights that are an integral part of the residential use," has no meaning when a parcel has a residence on it and only has meaning when applied to a parcel that is contiguous to a parcel that has a residence.  Concluding that it does not apply to a contiguous parcel renders it meaningless.

---

[7] The dissent concludes that "there's no need to distinguish between [the application of the definition of residential improvements] to a single parcel of land and an assemblage of contiguous parcels of land" because the definition of "residential land" uses the term "residential improvements" as applying to both. *Infra* ¶ 80.  I agree that the plural term "residential improvements" applies to both parcels, but, in my view, it means that residential improvements must be present on both parcels.  And it is precisely because the definition of "residential land" uses the defined term "residential improvements" that we must ensure that we apply the latter definition and ensure that it is not rendered meaningless.  As in *Fifield* and *Hogan,* the dissent does not do so.

## E.   Rejecting *Fifield* and *Hogan*

¶ 36   I decline to apply statements to the contrary in *Fifield* and *Hogan*. *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1195 (Colo. App. 2011) (divisions of this court are not bound by the decisions of other divisions).

¶ 37   In *Fifield*, the property owners had subdivided a parcel into two contiguous parcels. One parcel contained their residence and the other had a paved road and a utility line. *Fifield*, ¶ 2. The BAA found that the parcel without the residence did not contain residential improvements and, therefore, did not qualify as "residential land." The division concluded that it was not necessary for the parcel without the residence to contain residential improvements to qualify as residential land. However, in reaching this conclusion, the division did not cite section 39-1-102(14.3), apply the definition of "residential improvements," consider whether the paved road and utility line constituted structures or fixtures used as "an integral part of the residential use" of the adjoining parcel, or cite or consider whether its application was consistent and harmonious with the definition of "vacant land." Instead,

25

without analyzing the interplay between subsections 102(14.3) and (14.4)(a) or explaining its reasoning, the division ignored subsection 102(14.3); substituted the constitutional term "residential dwelling unit" in place of the statutory definition of "residential improvements"; and stated only that "reading the statute and the constitutional provision together," "residential land must (1) contain a residential dwelling unit,[8] and (2) be used as a unit in conjunction with the residential improvements on the residential land." *Id.* at ¶ 9.

¶ 38     As in *Fifield*, the *Hogan* division did not cite section 39-1-102(14.3), apply the definition of "residential improvements," or consider whether a sewer line and driveway on a parcel constituted structures or fixtures used as "an integral part of the residential use" of the adjoining parcel. As in *Fifield*, the division did not address the interplay between subsections 102(14.3) and (14.4)(a) or include the reasoning underlying its conclusion. Nor did it cite

---

[8] The term "residential dwelling unit" appears in the definition of "bed and breakfast" in subsection 102(2.5) and nowhere else in subsection 102. It also appears in article X, section 3 of the state constitution.

26

or consider whether its application was consistent and harmonious with the definition of "vacant land."

¶ 39     The issue in *Hogan* was not whether residential improvements were required on the contiguous parcels, but whether the parcel with the sewer line and driveway was "used as a unit in conjunction with the residential improvements."[9]  As to that issue, the parcels' owners argued that "(1) the likelihood of the parcel being conveyed separately [was] irrelevant; (2) the use of the parcel need not be necessary or essential to qualify as integral; and (3) use of the parcel need not be 'active' as opposed to merely 'passive.'" *Hogan*, ¶ 14.

---

[9] In *Hogan*, the owners had a home on a parcel of land and bought two connected and contiguous parcels in separate transactions. They built a deck that extended from their home across the boundary line onto the second parcel.  The third parcel had an underground sewer line and an unpaved driveway installed by the original developer of the subdivision, but was otherwise undeveloped.  The county assessor classified both the second and third parcels as vacant land.  After the owners asked that those parcels be reclassified as residential land, the assessor agreed that the parcel onto which the deck extended qualified as residential land but denied the request to reclassify the third parcel as residential.

¶ 40     In dicta, the division stated that it agreed with the substantive holding of *Fifield* and, without discussion, rejected the contrary holding in *Rust v. Board of County Commissioners*, 2018 COA 72.

¶ 41     For these reasons, I decline to follow the holdings in *Fifield* and *Hogan*.  *Valentine*, 252 P.3d at 1195.

### F.    Legal Conclusions

¶ 42     The definition of "residential land" is dependent on the definition of "residential improvements," and we must ensure that we apply subsections 102(14.4)(a) and 102(14.3) in a manner that is consistent and harmonious.  Concluding, as the dissent appears to do, that the wording of subsection 102(14.4) obviates or belies the need to apply the second sentence of subsection 102(14.3) implies that subsection 102(14.4) can properly be applied without ensuring that the latter sentence is not rendered meaningless.

¶ 43     Applying the two provisions in harmony, I conclude that for both of two contiguous parcels of land to qualify as "residential land," (1) one parcel must have a residence on it; (2) the other must have a man-made structure or water rights that are an integral part of the use of the residence on the neighboring parcel; and (3) the

28

land must be used as a unit in conjunction with the residential improvements on the parcels.

¶ 44 Construing subsections 102(14.3) and 102(14.4) in a manner that gives consistent, harmonious, and sensible effect to them and does not render any language meaningless, the second sentence of subsection 102(14.3) necessarily applies to a parcel that is contiguous to a parcel on which there is a residence and requires that a contiguous parcel can be classified as "residential land" only when it has buildings, structures, fixtures, fences, amenities, or water rights that are an integral part of the residential use of the neighboring parcel. *See Sullivan*, 971 P.2d at 676 (in dicta, stating that a parcel may qualify for residential classification by containing a residence or by having residential improvements used as a unit in conjunction with the residence on a neighboring parcel that is under common ownership with it).

## VI. Conclusions Regarding the Trust's Application

### A. The Vacant Parcel Is Not Used as a Unit in Conjunction with a Residence

¶ 45 The Trust argues that the Martins use the vacant parcel as a unit in conjunction with residential improvements by ensuring that

29

it remains vacant, protects the privacy of the residence, and does not obstruct the ability to see beyond the vacant parcel. We are not persuaded. We also reject the Trust's argument that using the vacant parcel by looking at things beyond it satisfies this requirement so long as the Martins do not use the parcel for non-residential purposes such as commerce or agriculture. To the contrary, this argument illustrates the difference between actively using land and passively benefiting from it.

¶ 46    The Trust is making the same argument made by the property owners in *Twilight Ridge*, ¶ 20. The argument was rejected by the division in *Twilight Ridge*, and we reject it here as well. Without reiterating the entire analysis in *Twilight Ridge*, we emphasize that such a construction is at odds with that of the Property Tax Administrator in the Assessors' Reference Library (ARL). The ARL analysis requires inquiry into four factors. The second ("Are the parcels considered an integral part of the residence and actually used as a common unit with the residence?"), which was at issue here, is a separate inquiry from the fourth ("Is the primary purpose of the parcel . . . for the support, enjoyment, or other non-

commercial activity of the occupant of the residence?"), which would seem to address situations in which a vacant parcel is used to enhance enjoyment of a residence on a contiguous parcel by protecting views. 2 Div. of Prop. Taxation, Dep't of Local Affairs, *Assessors' Reference Library* § 6, at 6.11-.12 (rev. Oct. 2018). The ARL provides that the answers to all four criteria should be "yes" in order for a vacant parcel to receive residential classification. *Id.* at 6.12.

¶ 47    For the reasons stated above as well as those stated in *Twilight Ridge*, we are not persuaded otherwise by the Trust's reliance on *Gyurman v. Weld County Board of Equalization*, 851 P.2d 307, 310 (Colo. App. 1993), and *Farny*, 985 P.2d at 109, both of which applied subsection 102(14.4)(a) to single parcels. Those cases do not provide a workable standard that gives effect to the statutory "used as a unit" language in a multi-parcel case such as this one. As to this issue, we conclude that the analysis in *Rust v. Board of County Commissioners*, 2018 COA 72, is preferable to that in *Hogan*.

## B. The Vacant Parcel Does Not Contain Any Residential Improvements That Are an Integral Part of the Use of a Residence

¶ 48    There is no evidence that there are any structures on the Trust's west parcel that are an integral part of the residential use of the residential building on the east parcel.

¶ 49    Mr. Martin testified that he and his wife purchased the two parcels in the same transaction in 2000 and that they did so to protect the views, have privacy, and maintain the value of the parcel with the residence.  Mr. Martin testified that there is a DOW fence along the north boundary of those two parcels and the west boundary of the west parcel.  He said DOW built it and that it was there when he bought the parcels.  Nonetheless, Mr. Martin helped maintain the fence, maintained a ditch along the west side of the west parcel, and rented a trencher to remove silt build-up in the ditch.

¶ 50    Hence, there is no evidence that the fence is on either of the Trust's parcels, and there is no evidence that there is any structure on the west parcel that the Martins regularly use as a material

32

feature of their residential use of the east parcel on which there is a residence.

¶ 51    Because the Trust's west parcel does not have any buildings, fixtures, fences, amenities, or water rights that are an integral part of the residence on the adjacent parcel, it cannot be classified as "residential land."

## VII.   Conclusion

¶ 52    The west parcel does not qualify for designation as residential land.  The BAA's order for tax years 2014 denying residential land designation regarding the west parcel is affirmed, and the order for tax years 2015-2016 granting such designation for the west parcel is reversed.  The case is remanded to the BAA to issue an order consistent with the majority's conclusion that no part of the west parcel is "residential land" because the parcel is not being used in conjunction with residential improvements.

¶ 53    Having reached these conclusions, we do not address the issues of whether "used as a unit in conjunction with the residential improvements" requires that use of the west parcel be essential to the residential use, whether the two parcels were under

33

common ownership in 2014, and whether it was proper for the BAA

to apply a mixed classification to the west parcel.

JUDGE VOGT specially concurs.

JUDGE HAWTHORNE dissents.

JUDGE VOGT, specially concurring.

¶ 54     I agree with Judge Carparelli that the BAA erred in classifying any portion of the contiguous parcel as residential for the tax years in question, and I therefore concur in the result set forth in his opinion.  However, because I conclude that the contiguous parcel did not satisfy the "used as a unit" requirement for residential classification, I would resolve the appeal on that basis alone, without reaching the other issues raised by the parties.

¶ 55     Section 39-1-102(14.4)(a), C.R.S. 2018, provides for residential use classification for a vacant parcel contiguous to a residential parcel under common ownership if the vacant parcel is "used as a unit in conjunction with the residential improvements" on the residential parcel.  Here, the vacant parcel was used to protect the property owners' views.  In arguing that that use, without more, was enough to satisfy the statutory "used as a unit" requirement, the owners contend that using vacant land in any manner (other than for commercial or agricultural purposes) to "enhance the use or enjoyment" of the residence satisfies that requirement.

¶ 56    As Judge Carparelli notes, this is the same argument made by the property owners in *Twilight Ridge, LLC v. Board of County Commissioners*, 2018 COA 108, ¶ 20.  The *Twilight Ridge* division rejected the argument for the following reasons: (1) although section 39-1-102(14.4)(a) refers to both "a parcel" and "contiguous parcels of land under common ownership," it does not follow from this that the same facts as those found relevant in single-parcel cases must necessarily be of equal relevance or importance in contiguous-parcel cases; (2) the argument ignores the inquiry prescribed in the ARL for determining whether a vacant contiguous parcel should be classified as residential; and (3) interpreting "used as a unit" to mean no more than simply "used" is effectively reading language out of the statute, which we may not do.

¶ 57    I agree with the analysis and the result in *Twilight Ridge* and would follow it here.  Because no portion of the contiguous vacant parcel should have been classified as residential, it is unnecessary to reach the other issues raised by the parties.

JUDGE HAWTHORNE, dissenting.

¶ 58    I respectfully dissent.

¶ 59    I conclude that for contiguous parcels of land to qualify as residential land for real property tax classification purposes under section 39-1-102(14.4)(a), C.R.S. 2018,

- residential improvements aren't required to be located on each contiguous parcel of land;
- each contiguous parcel may be used for an active or a passive purpose as long as the assemblage of contiguous parcels is used as a unit in conjunction with the residential improvements located on one or more of the parcels; and
- the contiguous parcels' use doesn't have to be essential to using the residential improvements.

¶ 60    I also conclude that the BAA's partial classification of the Trust's west parcel as residential land was reasonable under the law because determining residential land's appropriate size is a question for the BAA to decide based on the evidence in each case as to how the taxpayer uses the parcel.

¶ 61    Because I reach these conclusions, I would address an issue that the majority doesn't reach: the Trust's contention that the BAA

37

erred by concluding that the residential and west parcels weren't commonly owned for tax year 2014. And I conclude as to that issue that the BAA erred in denying the Martins' request to reclassify the west parcel for tax year 2014 because they overcame the presumption of ownership created by the clerk and recorder's title records, and presented sufficient evidence showing that they were the west parcel's functional owners.

¶ 62     But first, I address the majority and specially concurring opinions. I understand that Judge Vogt would resolve this case on narrower grounds and may not agree with every aspect of Judge Carparelli's opinion. But for simplicity's sake I'll refer to all of Judge Carparelli's opinion as the majority opinion.

## I.     *Used as a Unit*

¶ 63     The Trust contends that the BAA erred by finding that for tax years 2015-2016 one-third of the west parcel was vacant land because it misconstrued the statute's "used as a unit in conjunction with the residential improvements" element of section 39-1-102(14.4)(a). Specifically, the Trust argues that case law addressing the phrase "used as a unit" as to single parcels "appl[ies]

38

equally" to contiguous parcels, and that those cases establish that undeveloped land adjacent to a residential parcel is "used as a unit" with that parcel when "(1) the land is used in any manner to enhance the use or enjoyment of the residence — including merely keeping other people off . . . the land, and (2) the land is not used for nonresidential purposes such as commerce or agriculture." So, according to the Trust, because the west parcel was purchased to protect the Martins' residential views, and a house located on that parcel would impact such views, "[t]hese undisputed facts standing alone are more than sufficient to require residential classification of the entire assemblage."

¶ 64    The County contends that while the BAA's factual findings are supported by the record, it erred as a matter of law by reclassifying two-thirds of the west parcel as residential land for tax years 2015-2016 because the "used as a unit" element requires that each parcel of land must contain its own residential improvements. The majority opinion agrees and, like the County, relies on *Sullivan v. Board of Equalization*, 971 P.2d 675 (Colo. App. 1998). The County further argues that, assuming improvements aren't required on

39

each parcel, the "used as a unit" element requires "actual, integral use," which wasn't met here because such "'use' of the parcel for buffering, views, or occasional, incidental recreational activities is clearly not integral, disqualifying the [west] [p]roperty from eligibility for residential land classification." Again, the majority opinion agrees with the County's argument.

¶ 65    The BAA now also asserts that "passive uses," such as view preservation, don't "satisfy the statutory requirement that an adjacent parcel be used as a unit in conjunction with a residence." But in the alternative, the BAA argues, if preserving a view satisfies the "used as a unit" requirement, and it properly relied on *Fifield v. Pitkin County Board of Commissioners*, 2012 COA 197, to reclassify the west parcel as mixed residential and vacant land, its factual findings were correct and its partial classifications should be upheld.

¶ 66    I respectfully disagree with the majority and specially concurring opinions on these issues, and I would affirm the BAA's classification of a portion of the west parcel as residential land.

40

### A.    Standard of Review and Applicable Law

¶ 67    A land classification determination for property tax purposes is a mixed legal and factual question. *Kelly v. Bd. of Cty. Comm'rs*, 2018 COA 81M, ¶ 10 (citing *Home Depot USA, Inc. v. Pueblo Cty. Bd. of Comm'rs*, 50 P.3d 916, 920 (Colo. App. 2002)).  We defer to "the BAA's classification . . . if it has a reasonable basis in law and is supported by substantial evidence in the record considered as a whole." *Farny v. Bd. of Equalization*, 985 P.2d 106, 109 (Colo. App. 1999).

¶ 68    Judicial deference to an agency's statutory interpretation "is appropriate when the statute before the court is subject to different reasonable interpretations and the issue comes within the administrative agency's special expertise." *Huddleston v. Grand Cty. Bd. of Equalization*, 913 P.2d 15, 17 (Colo. 1996).  But "we are not bound by a decision that misapplies or misconstrues the law." *Jet Black, LLC v. Routt Cty. Bd. of Cty. Comm'rs*, 165 P.3d 744, 748 (Colo. App. 2006).  We review interpretations of taxation statutes de novo. *Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011).  "Our primary task is to ascertain and

effectuate the intent of the General Assembly." *Moffett v. Life Care Ctrs. of Am.*, 219 P.3d 1068, 1072 (Colo. 2009). In construing a statute, we look to its plain and ordinary language to give effect to the legislature's intent. *Young v. Brighton Sch. Dist. 27J*, 2014 CO 32, ¶ 11. We consider the statute as a whole, construing it to give consistent, harmonious, and sensible effect to all its parts. *Oakwood Holdings, LLC v. Mortg. Invs. Enters. LLC*, 2018 CO 12, ¶ 12.

¶ 69    "The Colorado Constitution states that all taxes upon real property shall be uniform and distinguishes agricultural and residential property from other types of real property for assessment purposes." *Boulder Cty. Bd. of Equalization v. M.D.C. Constr. Co.*, 830 P.2d 975, 978 (Colo. 1992) (citing Colo. Const. art. X, § 3(1)(a)); *see also Jensen v. City & Cty. of Denver*, 806 P.2d 381, 385 (Colo. 1991) ("Uniformity of taxation is required within a class, not between or among different classes.").

¶ 70    In 1982, the Colorado Constitution was amended to define "[r]esidential real property" as that "which shall include all residential dwelling units and the land, as defined by law, on which

such units are located." Colo. Const. art. X, § 3(1)(b); *see* H.R. Con. Res. 1005, 53d Gen. Assemb., 2d Reg. Sess., 1982 Colo. Sess. Laws 691. This amendment created a separate residential land property tax assessment rate lower than non-residential or non-agricultural land. *See* Colo. Const. art. X, § 3(1)(b); *Writer Corp. v. Bd. of Assessment Appeals*, 721 P.2d 1212, 1213 (Colo. App. 1986).

¶ 71 The residential land classification statute adopted after the constitutional amendment, section 39-1-102(14.4)(a), provides as follows:

> "Residential land" means a parcel or
> contiguous parcels of land under common
> ownership upon which residential
> improvements are located and that is used as
> a unit in conjunction with the residential
> improvements located thereon. . . . The term
> does not include any portion of the land that is
> used for any purpose that would cause the
> land to be otherwise classified.

¶ 72 The statute's history shows that the "legislative intent was to grant homeowners a modicum of tax relief." *Vail Assocs., Inc. v. Bd. of Assessment Appeals*, 765 P.2d 593, 594-95 (Colo. App. 1988).

¶ 73 The Property Tax Administrator (PTA) is statutorily required to prepare and publish manuals, appraisal procedures, and

43

instructions concerning methods of appraising and valuing land. § 39-2-109(1)(e), C.R.S. 2018. The PTA has published the Assessors' Reference Library (ARL), which county assessors are required to follow. *Huddleston* 913 P.2d at 17-18. The PTA has interpreted the statutory definition of "residential land" in subsection 102(14.4) to mean that "[p]arcels of land, under common ownership, that are contiguous and used as an integral part of a residence, are classified as residential property." 2 Div. of Prop. Taxation, Dep't of Local Affairs, *Assessors' Reference Library* § 6, at 6.11 (rev. Oct. 2018).

¶ 74    The PTA also suggests non-exclusive judgment criteria for assessors to consider in determining whether contiguous parcels of land "can be defined as residential property":

- Are the contiguous parcels under common ownership?

- Are the parcels considered an integral part of the residence and actually used as a common unit with the residence?

- Would the parcel(s) in question likely be conveyed with the residence as a unit?

- Is the primary purpose of the parcel and associated structures to be for the support,

44

> enjoyment, or other non-commercial activity
> of the occupant of the residence?

*Id.* at 6.11-.12. "If answers to all of these criteria are yes, then it is likely that the parcel would fall under the residential classification." *Id.* at 6.12. It is undisputed that the parcels at issue in this case are contiguous parcels.

### B. *Construing Subsection 102(14.4)(a)*

¶ 75 Before explaining in detail why I disagree with the majority opinion as to the specific issues mentioned above, I explain how I construe the plain language of the first sentence of subsection 102(14.4)(a): "'Residential land' means a parcel or contiguous parcels of land . . . upon which residential improvements are located and that is used as a unit in conjunction with the residential improvements located thereon."[1]

¶ 76 The subsection's first clause defines residential land as "a parcel or contiguous parcels of land." So, without the subsection's further qualifying language, one parcel of land or an assemblage of contiguous parcels of land would constitute residential land under

---

[1] I omit the words "under common ownership" because I address that separate issue later.

45

the statute. But the General Assembly added qualifying language: "upon which residential improvements are located." And that language, considering later qualifying language in the sentence, must apply to a parcel or the assemblage of contiguous parcels of land, not to a parcel and each separate contiguous parcel of land. This latter interpretation of the phrase doesn't make sense because the statute's language doesn't indicate that the contiguous parcels are considered separately. Such an interpretation would be supported only if the qualifying phrase "upon which residential improvements are located" instead read "upon *each* of which residential improvements are located." *See Auman v. People*, 109 P.3d 647, 656-57 (Colo. 2005) ("Just as important as what the statute says is what the statute does not say. . . . We should not construe these omissions by the General Assembly as unintentional."). And more importantly, the next piece of qualifying language — the subordinate clause "that *is* used as a unit" — has a singular verb. (Emphasis added.) When used with the disjunctive "a parcel *or* contiguous parcels of land," this language indicates that a parcel and an assemblage of contiguous parcels are to be treated

46

as singular alternatives.  (Emphasis added.)  It follows then that the phrase "in conjunction with the residential improvements located *thereon*" must mean improvements located on a parcel or an assemblage of contiguous parcels of land.  (Emphasis added.)

¶ 77    Relying on this plain language reading of subsection 102(14.4)(a), I now address the parties' specific arguments and the majority and specially concurring opinions' analysis and rulings as to those arguments.

### C.    *Residential Improvements Aren't Required on Each Contiguous Parcel*

¶ 78    First, for the reasons explained above, I disagree with the County's contention and the majority opinion's conclusion that, like *Sullivan*, there must be residential improvements located on each of the contiguous parcels to qualify all of the land constituting the contiguous parcels as residential land.  To interpret the statute this way would require adding the word "each" to it.  A court can't do that.  *Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007) ("We do not add words to the statute or subtract words from it."); *see People v. Diaz*, 2015 CO 28, ¶ 12.

¶ 79     And in *Sullivan*, the two contiguous parcels at issue didn't have common ownership as required by the statute, so the taxpayer "was relegated to arguing that the undeveloped parcel 'qualified for residential classification *independently from the adjacent improved parcel.*'" *Hogan v. Bd. of Cty. Comm'rs*, 2018 COA 86, ¶ 40 (quoting *Sullivan*, 971 P.2d at 676). I agree with the other divisions of this court that have addressed this issue and have concluded that each contiguous parcel constituting residential land needn't contain residential improvements, and that any contrary language in *Sullivan* was dicta. *See Hogan*, ¶ 42; *Fifield*, ¶ 13. I also respectfully disagree with the majority opinion's conclusion that under subsection 102(14.4)(a) and the second sentence of section 39-1-102(14.3), a parcel of land commonly owned and contiguous to another parcel on which a residence is located also must have residential improvements on it to be part of the residential land "that is used as a unit in conjunction with the residential improvements located thereon." I do so because, as explained above, subsection 102(14.4)(a)'s plain language compels a contrary reading.

¶ 80    So I don't find persuasive the majority opinion's analysis that the definition of "residential improvements" in subsection 102(14.3) somehow changes the meaning of subsection 102(14.4)(a)'s plain language. The majority opinion says that because the "residential improvement" definition includes more than residences, such as structures, fixtures, fences, amenities, and water rights, those improvements are required on each contiguous parcel that doesn't have a residence on it. Otherwise, the majority opinion concludes, the expanded "residential improvement" definition is meaningless. But that conclusion is belied by subsection 102(14.4)(a)'s definition of "residential land" as a parcel or an assemblage of contiguous parcels of land on which residential improvements are located. Under the statute's plain language, there's no need to distinguish between its application to a single parcel of land and an assemblage of contiguous parcels of land. As *Hogan*, ¶ 34, said:

> [B]y its structure and language, section 39-1-102(14.4) and the standards it enunciates apply to both single and multiple-parcel properties. § 39-1-102(14.4)(a) ("'Residential land' means a parcel *or* contiguous parcels of land[.]") (emphasis added).

49

¶ 81    Further, my reading of subsection 102(14.4)(a)'s plain language doesn't compel the conclusion that the expanded "residential improvement" definition in the second sentence of subsection 102(14.3) is rendered meaningless.  For example, that language may be relevant to the expanded residential land definition in the second sentence of subsection 102(14.4)(a): "The term [residential land] includes parcels of land in a residential subdivision, the exclusive use of which land is established by the ownership of such residential improvements."  § 39-1-102(14.4)(a). The General Assembly may have intended that the exclusive use of parcels in a residential subdivision is established solely by the ownership of residential improvements such as those included in subsection 102(14.3)'s second sentence.  So I respectfully disagree that the majority opinion's residential land interpretation is the only one that doesn't obviate the expanded residential improvements meaning.

¶ 82    And, I'm not persuaded by the majority opinion's analysis as to how section 39-1-103(14)(c)(I), C.R.S. 2018, applies to subsection 102(14.4)(a)'s residential land definition because subsection

50

103(14)(c)(I) expressly says that it defines vacant land "[f]or purposes of this subsection [103](14)."  Also, under subsection 103(14)(a), the General Assembly clearly indicates that all of subsection 103(14) deals with the methods of appraisal to be used by assessing officers in properly determining the actual value of vacant land.  The subsection says nothing about using the vacant land definition for property tax classification purposes or that it alters the residential land tax classification scheme.  *See* § 39-1-103(14).

D.    *There is No "Active" Use Requirement in the Statute*

¶ 83    Next, I don't interpret the word "used" in the statute's "used as a unit" phrase as narrowly as the majority and specially concurring opinions do when they reject the Trust's argument that using the west parcel to protect the view from the residence is enough to satisfy the statutory "used as a unit" requirement.

¶ 84    Instead, I agree with the *Hogan* division's rationale and I "find no statutory support for [such a] restrictive interpretation of 'use' . . . [and] see nothing in section 39-1-102(14.4)(a) that would limit the definition of 'used' to 'active' uses.  The usual meaning of

51

'used' is 'employed in accomplishing something.'" *Hogan*, ¶ 29 (quoting Merriam-Webster Dictionary, https://perma.cc/XWB7-7PMD); *see also O'Neil v. Conejos Cty. Bd. of Comm'rs*, 2017 COA 30, ¶ 26 ("We perceive no unreasonable application of the law in the Board's refusal to characterize the property's use as 'commercial' instead of 'residential' during the time the property was unoccupied. In the first instance, 'homes which stand empty for a period of time would not lose their residential classification simply because they were not 'actually' being used as a residence.'" (quoting *Mission Viejo Co. v. Douglas Cty. Bd. of Equalization*, 881 P.2d 462, 465 (Colo. App. 1994))).

¶ 85    I also agree that "existing case law supports a more expansive definition of the term." *Hogan*, ¶ 30; *Gyurman v. Weld Cty. Bd. of Equalization*, 851 P.2d 307, 308 (Colo. App. 1993) (upholding a residential classification for a 36.75-acre tract, noting that the "taxpayer testified that he bought the property because he was looking for at least 40 acres to 'get some distance' between himself and other people and that he used it by 'looking at the wildlife that was out there and keeping people off of it'").

¶ 86    While *Gyurman* didn't involve multiple parcels, there is nothing in subsection 102(14.4)'s "used as a unit" language suggesting that it applies differently to a single parcel than to an assemblage of contiguous parcels. *Hogan*, ¶ 34; *see* § 39-1-102(14.4)(a) ("'Residential land' means a parcel or contiguous parcels of land[.]").

¶ 87    I recognize that another division of this court in *Rust v. Board of County Commissioners*, 2018 COA 72, held that the BAA didn't misconstrue subsection 102(14.4)(a)'s "used as a unit" element, *id.* at ¶¶ 4, 7, and rejected the contention "that we should apply the same standard for multiple parcels of land that we apply to single parcels" because it didn't think that the single parcel standard should apply. *Id.* at ¶ 11. The division went on to conclude that the *additional* requirement for multiple parcels — that the subject parcel be integral to the residential parcel — was reasonable because this requirement is unnecessary where only a single parcel is involved. The division reasoned that a single parcel "is already integrated by virtue of its inherently unified character." *Id.* I respectfully disagree with this reasoning. Subsection 102(14.4)(a)'s

53

plain language doesn't create separate standards for single parcels and an assemblage of contiguous parcels; they're treated exactly the same under the statute. And I also respectfully disagree with the statement in *Rust* that a single parcel "is already integrated by virtue of its inherently unified character." Other divisions of this court have recognized that single parcels don't necessarily have an inherently unified character and that "in the context of a single lot, the amount of land entitled to residential classification is determined solely by what portion of the lot is used as a unit in conjunction with a residential improvement." *Fifield*, ¶ 12; *also see Gyurman*, 851 P.2d at 310 ("the appropriate size of the residential acreage which is consistent with the taxpayer's use of the property" is a question of fact for the BAA to decide based on the evidence in each case). So I would decline to follow *Rust* for this reason.

¶ 88 Also, *Rust* is distinguishable because the division there "decline[d] to decide the scope of what use constitutes sufficient use of the vacant lot to qualify as being used as a unit for residential classification." ¶ 10 n.1. And I'm not bound by the decision of

another division of this court. *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1195 (Colo. App. 2011).

### 1. Unit Doesn't Mean Essential

¶ 89    The County asserts that the plain meaning of the word "unit" in the statute's "used as a unit" phrase means "constituent," which itself means "essential." So, it argues, "there must be credible evidence that [the west parcel] is an essential part of — i.e., integral to — the residential improvements." I disagree.

¶ 90    Again, I read the plain language of the statute — "and *that is* used as a unit in conjunction with the residential improvements" — as referring to the defined "residential land," which constitutes either (1) a single parcel or (2) an assemblage of contiguous parcels. (Emphasis added.) Thus, the statute requires that, to qualify as residential land, the land (whether a parcel or contiguous parcels) must be used in conjunction with the residential improvements as *a unit*, not *as units*. In light of the statute's plain language, the County's proposed definition of "unit" as "a single thing, person, or group that is a constituent of a whole" is, at best, confusing. If the "unit" constitutes all the land used in conjunction with the

55

residential improvements, to define unit as "a single thing, person, or group that is a constituent of a whole" would render the entire residential land assemblage as a constituent of a further undefined "whole." Instead, the statute defines residential land as the parcel or contiguous parcels that are used in conjunction with the residential improvements on that land as *one*, also a definition of unit. *See* Merriam-Webster Dictionary, https://perma.cc/B6NL-WZWK.

¶ 91 This definition comports with existing case law requiring that a residential classification be based on the parcels' use in conjunction with the residence. *See Fifield*, ¶ 9 ("Therefore, here, taxpayers' residential land consists of those *portions* of Lot One and Lot Two that were used as a unit in conjunction with the home on Lot One . . . .") (emphasis added).

## 2. *Integral*

¶ 92 The County contends that the statute's "used as a unit" element as interpreted by the ARL requires "integral use," and that "buffering, views or occasional, incidental recreational activities" do not constitute integral use. I disagree.

56

¶ 93    As to the ARL's "integral" language, although the statutory residential land definition doesn't use the word "integral," "[I] nevertheless defer to the ARL in its interpretation if that interpretation accords with statutory provisions." *Hogan*, ¶ 22 (citing *HealthSouth Corp.*, 246 P.3d at 951). "Integral" is defined as "formed as a unit with another part." *Id.* (quoting Merriam-Webster Dictionary, https://perma.cc/RJ5M-CNFA). This definition is compatible with the statute's "used as a unit in conjunction with the residential improvements" language. § 39-1-102(14.4)(a); *Hogan*, ¶ 22. Conversely, the County's proposed interpretation that "integral" requires that the parcel's or contiguous parcels' use is "essential" to residential improvements has no support in the statute. *Hogan,* ¶ 23. "We do not add words to a statute." *HealthSouth Corp.*, 246 P.3d at 951. "Hence, we 'decline to judicially rewrite these statutes by adding this language.'" *Hogan*, ¶ 23 (quoting *Marsico Capital Mgmt., LLC v. Denver Bd. of Cty. Comm'rs*, 2013 COA 90, ¶ 25).

¶ 94    I also disagree with the County that *Fifield* "require[s] the [s]ubject [p]roperty's use to be integral to residential improvements."

57

The County argues that *Fifield* mandates integral use because the *Fifield* division cited section 6 of the ARL favorably. But I agree with the *Hogan* division that "the issue before the division in *Fifield* was different from the issue in [*Hogan*]. *Fifield* addressed whether separate parcels that are commonly owned and contiguous must *each* contain a residential improvement to qualify as residential land." *Hogan*, ¶ 43 (citing *Fifield*, ¶ 11). And the *Fifield* division merely held that its interpretation of subsection 102(14.4)(a) "comport[ed]" with and was "consistent" with the ARL. *Fifield*, ¶¶ 10-11. So *Fifield* doesn't compel a different result. *Hogan*, ¶ 44. Nor am I bound by the decisions of this court's other divisions. *Valentine*, 252 P.3d at 1195.

¶ 95    Also, I respectfully disagree with the majority and specially concurring opinions that my reading of subsection 102(14.4)(a) is at odds with the ARL. To the contrary, my analysis concludes that the Martins' view preservation and privacy uses comport with the ARL's "integral" language. Just because these uses also easily satisfy the ARL's "primary purpose" factor doesn't mean they then fail to meet the "integral" or other ARL factors. *See* 2 Div. of Prop. Taxation,

Dep't of Local Affairs, *Assessors' Reference Library* § 6, at 6.11-.12 (rev. Oct. 2018).

¶ 96 For similar reasons, I respectfully disagree with the specially concurring opinion and the holding in *Twilight Ridge, LLC v. Board of County Commissioners*, 2018 COA 108. I agree that "the same facts as those found relevant in single-parcel cases [aren't] necessarily . . . of equal relevance or importance in contiguous-parcel cases." *Supra* ¶ 56. But that reasoning doesn't allow a County, or the BAA, to apply different standards to determine when land is being "used as a unit" within a single parcel and when land is being "used as a unit" within an assemblage of contiguous parcels. *See M.D.C. Constr. Co.*, 830 P.2d at 978 ("The Colorado Constitution states that all taxes upon real property shall be uniform and distinguishes . . . residential property from other types of real property for assessment purposes." (citing Colo. Const. art. X, § 3(1)(a))); *see also Jensen*, 806 P.2d at 385 ("Uniformity of taxation is required within a class . . . .").

¶ 97 Neither do I see how my conclusion ignores the ARL's inquiry "for determining whether a vacant contiguous parcel should be

classified as residential," *supra* ¶ 56, because, as I've concluded above, the Martins' use complies with the ARL's "integral" language.

¶ 98 The Martins bought the west parcel with the residential parcel in 2000. The uncontroverted evidence at the hearing showed that the Martins refused to buy the residential parcel separately, without the west parcel, because the west parcel "so affected our views and privacy . . . . And we felt that the construction of another home back there . . . that is behind our house in the direction of the open space . . . would substantially diminish our enjoyment of the property." For the County to decide almost two decades later that the west parcel isn't an integral part of the Martins' residence ignores the Martins' perceived residential value they originally placed on the west parcel, simply because it's a distinct parcel. That's not what the law intends.

¶ 99 So I disagree that my broader interpretation of "'used as a unit' . . . effectively . . . read[s] [the] language out of the statute." *Supra* ¶ 56. This interpretation is consistent with the statute's plain language and established precedent, and it furthers the statute's purpose "to grant homeowners a modicum of tax relief."

*Vail Assocs.*, 765 P.2d at 595; *see* § 39-1-102(14.4)(a); *Gyurman*, 851 P.2d at 308.

## II. *Mixed Classification*

¶ 100    Both the Trust and the County contend that the BAA erred by classifying the west parcel as partly residential and partly vacant. The majority doesn't reach this issue. Because of my resolution of the other issues raised by the parties, I am required to address it, and I disagree with the Trust and the County.

¶ 101    Specifically, the Trust asserts that the west parcel should have been classified as all residential because there was "no evidence of a non-residential use that would support a mixed classification." It relies on *Farny*. *See* 985 P.2d at 110 ("[B]ased upon the evidence presented at the BAA hearing, there is no basis for saying that some part of the land was used for a different purpose. Hence, the BAA properly found that all of the land should be classified as residential based on taxpayers' use of it in conjunction with their residential use of the cabin.").

¶ 102    The County asserts that under the taxation statute's section that creates a scheme for classifying land as mixed-use, section

39-1-103(9), vacant land is not a statutory "use of land," and because the residential improvements on the residential parcel were "not used for commercial or agricultural purposes, the [s]ubject [parcel] could only be classified, as a whole, as either 'vacant land' or 'residential land.'"

¶ 103    The BAA agrees that the mixed-use statute doesn't address vacant land classifications, but instead relies on *Fifield* for the proposition that land may be partially classified as residential. *See Fifield*, ¶ 14 ("[W]e remand the case to the BAA to determine what *portions* of Lot One and Lot Two were used as a unit in conjunction with a residential improvement for tax years 2008 and 2009 . . . .") (emphasis added).

¶ 104    I conclude that the BAA's partial classification was reasonable under the law.

¶ 105    Colorado precedent establishes that classifying a parcel's use is a factual decision. *Farny*, 985 P.2d at 110 ("[T]he determination as to the amount of acreage entitled to residential classification consistent with its use in conjunction with the residential improvements is a question of fact for the BAA to decide based on

the evidence in each particular case."); *Gyurman*, 851 P.2d at 310 ("[T]he determination of the appropriate size of the residential acreage which is consistent with the taxpayer's use of the property is also a question of fact for the BAA to decide based on the evidence in each particular case.").

¶ 106    A residential classification isn't an all or nothing determination as to each parcel.  § 39-1-102(14.4)(a) ("[Residential land] does not include any portion of the land that is used for any purpose that would cause the land to be otherwise classified[.]"); § 39-1-103(9) (mixed use property classifications); *Fifield*, ¶ 14; *Gyurman*, 851 P.2d at 309-10 ("[T]here is no prescribed limit on the amount of acreage which may be entitled to residential classification as being a part of a taxpayer's residence. . . .  As a result, depending on the facts in a particular case, the amount of such residential acreage may be either the taxpayer's entire property or only some lesser portion thereof, whichever is consistent with the taxpayer's use of the property.").

¶ 107    And I disagree with the County that the mixed-use statutory scheme controls this situation.  That statutory scheme is

inapplicable to the west parcel, as it only applies to parcels of land containing improvements. *See* § 39-1-103(9)(a) ("In the case of an improvement which is used as a residential dwelling unit and is also used for any other purpose . . . ."); § 39-1-103(9)(b) ("In the case of land containing more than one improvement, one of which is a residential dwelling unit . . . .").

¶ 108    I also disagree with the Trust that *Farny* mandates that the west parcel must be fully classified as residential land because "there is no basis for saying that some part of the land was used for a different purpose." 985 P.2d at 110.  In *Farny*, the BAA classified a single parcel containing a residential dwelling as completely residential.  But in this case, the BAA classified an unimproved parcel of land as partly residential based on its use as part of an assemblage of contiguous parcels in conjunction with the residential improvements thereon.  So *Farny* is distinguishable.

### III.    Common Ownership

¶ 109    The Trust contends that the BAA erred by finding that the west parcel was vacant land for tax year 2014 because it misconstrued the "common ownership" element.  Specifically, the

Trust asserts that the term means "substantially overlapping ownership or control" and is "not synonymous with 'identical ownership.'" It also argues that the Martins were equal beneficial owners of both parcels — as joint tenants of the residential parcel and the sole partners in the partnership that owned the west parcel — so they commonly owned both parcels.

¶ 110    I agree that the BAA erred.

### A.    Determining Ownership for Residential Real Property Tax Classification Requires a Functional Analysis

¶ 111    The term "common ownership" for property tax classification purposes isn't defined by the statute. And the PTA "has not defined 'common ownership,' or offered guidance to assessors on determining whether two parcels are 'under common ownership.'" *Kelly*, ¶ 12.

¶ 112    The division in *Kelly* addressed the statute's "common ownership" element, concluding that "ownership of contiguous parcels for purposes of subsection 102(14.4)(a) depends upon a person's or an entity's right to possess, use, and control the contiguous parcels," and isn't limited to "record titleholders." *Id.* at ¶¶ 19, 22.

65

¶ 113　I agree with that conclusion.  Colorado courts have long taken a "substance over form" approach to assessing ownership in property tax cases by looking "beyond bare record title and instead focus[ing] on who has the power to possess, use, enjoy, and profit from the property."  *Id.* at ¶ 16; *see Bd. of Cty. Comm'rs v. Vail Assocs., Inc.*, 19 P.3d 1263, 1278-79 (Colo. 2001) (outlining "'significant incidents of ownership' of interests in tax-exempt property"); *Mesa Verde Co. v. Bd. of Cty. Comm'rs*, 178 Colo. 49, 54, 495 P.2d 229, 232 (1972) (looking beyond "form and labels in order to ascertain the real ownership interest involved" when a state tax is assessed against federal property); *HDH P'ship v. Hinsdale Cty. Bd. of Equalization*, 2017 COA 134, ¶¶ 25-26 (*cert. granted* Apr. 9, 2018); *Gunnison Cty. v. Bd. of Assessment Appeals*, 693 P.2d 400, 404 (Colo. App. 1984) (record title does not determine ownership; rather, "[t]he question of ownership for tax purposes must be decided on the basis of 'real ownership' rather than 'forms and labels'").

¶ 114　The cases relied on by the County and BAA to support their argument that ownership for tax purposes is determined only by

66

record title aren't persuasive.  In fact, some support a functional ownership analysis.  For example, in *Salazar v. Terry*, 911 P.2d 1086 (Colo. 1996), the court discussed common ownership in the context of prior owners' acquiescence to legal boundaries of land.  The court didn't define "ownership" or indicate what analysis was required to determine it, because the same entity had record title to both parcels.  But it considered the corporation's underlying sole stockholder as the common owner.  *See id.* at 1088 ("Therefore, between November 3, 1977, and November 18, 1977, Mills Ranches owned both the Salazar and Terry Tracts simultaneously for fifteen days.  During this fifteen-day period, Jerry Mills, as sole stockholder and principal of Mills Ranches, was the common owner of both tracts.").

¶ 115    In *Westpac Aspen Investments, LLC v. Residences at Little Nell Development, LLC*, 284 P.3d 131, 136 (Colo. App. 2011), the division held that an easement had not terminated under the doctrine of merger, affirming the trial court's finding "when it concluded that the two lots were not owned in a 'completely identical manner.'"  *Id.* at 137.  The division didn't define "ownership," but simply noted

67

that in the easement context, "common ownership 'must be absolute, not defeasible or determinable, and coextensive, rather than owned in different fractions.'" *Id.* at 136 (quoting *Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.*, 57 P.3d 738, 748 (Colo. App. 2002)). And in *Westpac*, unlike here, at least one owner didn't have any ownership interest in one parcel. *See id.* at 137 ("Notably, because [an owner of Lot 2] did not possess an ownership interest in Lot 3, she still required an easement to access Lot 2 . . . . This situation highlights why common ownership of both estates must be absolute in order to extinguish an easement.").

¶ 116 *Traer Creek-EXWMT LLC v. Eagle County Board of Equalization*, 2017 COA 16, is also inapplicable. There, the division held that a person with only a leasehold interest didn't have "statutory standing to object to and protest the assessor's valuation of real property in fee." *Id.* at ¶¶ 10-15.

¶ 117 And contrary to the County's assertion, *Citibank, N.A. v. Board of Assessment Appeals*, 826 P.2d 871, 872 (Colo. App. 1992), supports using a functional ownership analysis. The division in that case rejected the petitioner's argument that "since beneficial

68

ownership of the commercial lots rests with Denver, Denver was the owner of the commercial lots for tax purposes." *Id.* at 872. The division also distinguished the facts applicable to ownership in *Gunnison County v. Board of Assessment Appeals*, 693 P.2d 400 (Colo. App. 1984), from the facts in its case. *See id.* at 872-73 ("In *Gunnison County* . . . this court noted that the county occupied and controlled the property, controlled construction and improvements of the property, maintained and insured the property, and retained an option to purchase the property. Here, Denver has not occupied the commercial lots, nor has it constructed any improvements on this property. Rather, the record indicates that during 1984-87, Denver, at most, simply considered the property in its planning for the construction of its new airport.") (citation omitted).

¶ 118    While assessors must determine real property ownership for property tax classification purposes from the clerk and recorder's records, these records create only a rebuttable presumption of ownership. *See* § 39-5-102(1), C.R.S. 2018 (providing that assessors determine real property ownership through the clerk and recorder, but a person claiming interest in the property "may file a

schedule with the assessor, specifying such interest");

§ 39-5-122(2), C.R.S. 2018 (providing a process for taxpayers to challenge assessment); *see also HDH P'ship*, ¶ 16 (concluding that record title creates a rebuttable presumption, but isn't conclusive evidence of ownership). "So, if, as here, a taxpayer seeks to reclassify a parcel, the burden is not on the assessor to justify the initial classification or prove ownership. Instead, the burden shifts to the taxpayer to show that the ownership presumption accorded to the record titleholder is not correct." *Kelly*, ¶ 21; *see Gyurman*, 851 P.2d at 310 (the taxpayer has the burden to rebut the presumption that the county assessor's classification is correct). If the taxpayer can't rebut the presumption, then the record title establishes ownership for the assessor's property tax classification purposes.

¶ 119 The BAA argues that using a functional analysis in determining ownership is "unfair" by "allow[ing] the [p]artnership to take advantage of [the] benefits of the limited liability limited partnership when it is favorable to it, while eschewing its corporate identity when it is more favorable to be identified as individuals."

70

I'm not persuaded.  The limited liability of partners in a partnership has nothing to do with determining "common ownership" under subsection 102(14.4)(a), whether one uses a functional analysis or a record title search.  Also, the cases relied on by the BAA are inapposite.  But I emphasize that my conclusion is limited solely to the assessor's process of classifying residential real property under subsection 102(14.4)(a).

### B.    *Evidence of Ownership*

¶ 120    Now I turn to the evidence presented at the BAA hearing about the parcels' ownership.  And I don't need to address the statute's "common" element, because if the Martins are the west and residential parcels' owners, no commonality issue exists because the parcels are owned identically.

¶ 121    Mr. Martin testified that in 2014, while the partnership held record title to the west parcel and the Martins held record title to the residential parcel, the parcels weren't used differently and there was no practical change in who controlled the parcels.  He said that he and his wife transferred the west parcel into the partnership on counsel's advice for estate planning reasons, and that he and his

71

wife were the partnership's sole equal general and limited partners. The Martins equally shared control of both the west and residential parcels in 2014, both were allowed to use and occupy each parcel, and the parcels weren't treated as separately owned. He testified that he and his wife had considered themselves as both parcels' owners since they purchased them in 2000 and had always considered the parcels to be a "single integrated property."

¶ 122 The County Assessor testified that the parcels weren't commonly owned in 2014 because there wasn't "exact ownership" between the record titles. On cross-examination, the Assessor agreed that both parcels were "functionally" owned by the Martins. The County presented no other evidence disputing that the Martins used, possessed, and controlled both parcels, or that they were the equitable owners of the west parcel.

¶ 123 While the BAA didn't find the Martins' evidence of use, possession, and control of the west parcel determinative, the undisputed evidence showed that the Martins, as the partnership's sole general and limited partners, enjoyed the "traditional benefits of real property ownership." *Kelly*, ¶ 28 (quoting *HDH P'ship*, ¶ 26).

72

¶ 124    Because the Martins overcame the presumption of ownership of the west parcel created by the clerk and recorder's title records by presenting sufficient undisputed evidence showing that they were the west parcel's functional owners, the BAA erred in denying their request to reclassify the west parcel for tax year 2014. *Id.* at ¶ 29.

### *IV.    Conclusion*

¶ 125    I would reverse the BAA's order for tax years 2014-2015 and remand to the BAA to reclassify those portions of the west parcel for tax year 2014 as residential land consistent with tax years 2015-2016. *Kelly*, ¶ 41 (remand for new hearing not necessary where the party's "undisputed right to use, possess, and control the residential and subject parcels . . . leads . . . to the legal conclusion that the parcels were under common ownership"). I would affirm the BAA's order for tax year 2016.